Christine HAYNES, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 82–1551.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 27, 1983.

Decided May 14, 1984.

Robert L. Loucks, Saginaw, Mich., for plaintiff-appellant.

Sheldon N. Light, Asst. U.S. Atty., Bay City, Mich., for defendant-appellee.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and HOLSCHUH, District Judge *.

NATHANIEL R. JONES, Circuit Judge.

This case involves a decision made by the Secretary of Health and Human Services

*The Honorable John D. Holschuh, United States District Court for the Southern District of Ohio,

(Secretary) to terminate plaintiff-appellant's Social Security Disability Benefits. We hold that the Secretary's decision was not supported by substantial evidence and that appellant is entitled to receive disability benefits.

## I.

On June 17, 1975, plaintiff-appellant, Christine Haynes, filed an application for Social Security disability benefits. She claimed that she had been disabled since January 1, 1975 due to tuberculosis, hypertension and headaches. Her claim was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) Bruce King granted appellant's claim for disability insurance benefits. In his decision dated April 18, 1978 ALJ King determined that appellant was disabled due to hypertension, hypertensive cardiovascular disease, pulmonary fibrosis and schizophrenia with paranoid features. As a result of this finding he granted appellant's claim for benefits except for the period between July, 1976 and August, 1977 when the appellant had returned to work.

On September 21, 1979 a determination was made that appellant's disability ended in July, 1979. At a subsequent hearing conducted at the appellant's request, ALJ Leech found that the appellant still suffered from essential hypertension, schizophrenia and narcolepsy. Nevertheless he concluded that none of these conditions was severe enough to prevent her from engaging in clerical work of a sedentary nature. Therefore, he denied her claim for further disability insurance benefits, and upheld the determination that the appellant's disability ended in July, 1979. The Appeals Council and the District Court affirmed ALJ Leech's decision and this appeal followed.

## II.

Appellant has an eleventh grade education and can read, write and make change.

sitting by designation.

She was last employed as an inspector at a Chevrolet plant where she worked from 1970 until April, 1978. With respect to her hypertension, several doctors have examined appellant since 1975 when she made her initial claim for disability benefits. She was hospitalized in January, 1975 with blood pressure of 180/110. By the time of her discharge in February, 1975, her pressure had gone down to 140/80 with the help of medication. By April 2, 1975, however, her blood pressure was back up to 190/140. Dr. Kang Lee examined appellant at that time and diagnosed her as having systemic hypertension, probably essential type. Three other doctors examined appellant between 1975 and 1976, all of whom agreed with Dr. Lee's determination. In January, 1978, appellant was admitted into the hospital again. At that time, her hypertension was diagnosed as controlled. A later report, however, by Dr. Lurie, appellant's treating physician, stated that the condition had not been controlled in spite of hospitalization. In particular Dr. Lurie indicated that in March, 1980 appellant's blood pressure readings were 190/120 and 200/120. He specifically stated that her hypertension had not been controlled in spite of hospitalization and medication, but noted that there was a question of compliance with his prescribed treatment. Therefore, he recommended a period of disability until the pressure could be brought under control. In addition, an examination conducted by Dr. Raffee on March 14, 1980 led him to conclude that appellant was disabled as a result of her hypertension. The only doctor who concluded that appellant's hypertension was reasonably controlled was Dr. Irving Kane, who in April, 1980, obtained a blood pressure reading in the range of 120/90. None of the doctors, found evidence of significant end organ damage as a result of appellant's hypertension.

The medical evidence indicates that appellant also suffers from schizophrenia. In October, 1977 Dr. Basel, a psychiatrist hired by the Social Security Administration, observed appellant and concluded that she was disabled. In particular he noted that:

(1) her orientation was somewhat confused, (2) her memory and knowledge of current events was poor, (3) her speech and reading were poor, although her mathematical ability was somewhat better, (4) her ability to abstract and conceptualize was barely within normal limits, (5) she had difficulty with questions involving basic common sense and judgment, (6) she felt that people stared at her and talked about her and felt that some people were against her, (7) she claimed to hear voices from demons, and (8) she complained of falling asleep suddenly, even when not sleepy which made her afraid to drive. Dr. Basel felt that appellant's schizophrenia may have commenced when she had an acute schizophrenic breakdown twelve years earlier.

On April 8, 1980, Dr. Basel examined appellant again. Although he noted certain improvements in her condition, Dr. Basel reached the same diagnosis that he had reached in 1977. He found that appellant still suffered from paranoia and from falling asleep. Accordingly, Dr. Basel concluded that appellant was disabled. In his report he stated:

It is felt that her prognosis for a complete recovery is somewhat nil. It is felt that she is unable to work at the present time and it is doubtful whether she will ever be able to return to work and certainly not within the next twelve months. The best that we can expect is that she can continue to function on her own and take care of herself. I can see the need for her to be in a nursing home in the future.

Dr. Irwin Finkelstein examined appellant on May 1, 1980. Dr. Finkelstein noted that appellant was unable to give him a complete history of her problems. He concluded, however, that appellant was certainly incapable of functioning psychiatrically.

Appellant visited a third psychiatrist, Dr. Kiyak, on a weekly basis for some period of time. But there is no report in the record indicating whether he believed that appellant was disabled as of July, 1979.

On July 13, 1979, appellant was examined by Dr. Forrer. Dr. Forrer is a psychiatrist who was apparently hired by appellant's former employer to determine whether her employment had aggravated her psychiatric condition. Dr. Forrer concluded that appellant had no disabling psychiatric condition in spite of the fact that she told him that she heard voices. His opinion was that appellant could work in spite of her psychiatric condition.

In addition to her other problems, appellant seems to suffer from narcolepsy, a condition which may be related to her schizophrenia. She underwent a neurological exam by Dr. H. Labson in May, 1981 to determine whether there was any physiological cause for her narcolepsy. He could find no neurological cause or adequate evidence of narcolepsy and concluded that appellant was able to return to work. At the hearing before ALJ Leech, Robert C. Snow, a vocational expert, testified that even if it were assumed that appellant had no physical disability, a person with chronic undifferentiated schizophrenia and sleeping problems would be difficult if not impossible to place. He also stated that the sleeping problem could be hazardous in the work place. But he noted that appellant might be able to perform clerical work if she were capable of doing the job and if there were someone who could wake appellant if she fell asleep.

Appellant also claims that she suffers from pulmonary fibrosis. Several examinations conducted between February, 1975 and April, 1980 revealed some abnormality in appellant's lungs. Every doctor except one, however, concluded that the severity of this abnormality was relatively minor and not disabling.

### III.

The role of the federal court reviewing the denial of Social Security Disability benefits is to determine whether the Secretary's decision is supported by substantial evidence. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ..." 42 U.S.C. § 405(g) (1976). *See also, Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401, 91 S.Ct. at 1427, *citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

While the claimant always has the ultimate burden of persuasion on the issue of disability, *Myers v. Richardson*, 471 F.2d 1265 (6th Cir.1972), several circuits have held that there is a presumption that the disability still exists in a case involving termination of benefits. *See e.g., Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983); *Iida v. Heckler*, 705 F.2d 363 (9th Cir.1983); *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir.1982); *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir.1973). *Cf. Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983). Accordingly, these circuits have concluded that the Secretary has the burden in termination cases of coming forward with evidence to show that the claimant's condition has improved since the initial disability determination. *Cf. Hayes v. Secretary*, 656 F.2d 204, 206 (6th Cir.1981). In *Iida v. Heckler, supra*, 705 F.2d 363, the Ninth Circuit explained the respective burdens of the parties in cases involving the termination of disability benefits:

A claimant seeking a ruling of disability bears the burden of proving that he is disabled. That burden continues even after an initial determination of disability. After the initial determination of disability is made, however, the claimant is entitled to a presumption that his or her disability still exists. Therefore, to terminate disability benefits, the Secretary has the burden of coming forward with evidence that the claimant's condition has improved since the initial disability determination. In the absence of proof to the contrary, it is presumed that the condition remains unchanged.

705 F.2d at 365 (citations omitted).

■ While this Court has not specifically addressed the issue of the allocation of the

burden of proof in termination cases, we have explicitly found error in the Secretary's failure to consider evidence of lack of improvement in the claimant's condition. In *Hayes v. Secretary*, 656 F.2d 204, 206 (6th Cir.1981), this Court held that disability benefits were improperly terminated where the Secretary ignored evidence which indicated that the claimant's "... condition had not changed since she had begun receiving benefits." We have thus presumed that a previous disability determination is valid unless evidence to the contrary can be produced. In light of this stated predilection and the persuasive analysis of the Ninth, Eleventh, Fifth and Third Circuits, we hold that the Secretary's initial determination that Haynes was disabled gives rise to a presumption that she is still disabled. *See Hayes*, 656 F.2d at 204.

This presumption of continuing disability requires that the Secretary produce evidence that the claimant's condition has improved, and in the absence of such evidence the claimant will be deemed to be still disabled. If the Secretary produces evidence that the claimant's condition has improved, the claimant, bearing the ultimate burden of showing disability, may, of course, produce evidence to the contrary. The standard of judicial review is whether the Secretary's finding that there has been medical improvement in the claimant's condition to the extent that the claimant is now able to engage in substantial gainful activity is supported by substantial evidence.

In this case there is overwhelming evidence that appellant's condition has remained essentially unchanged since she was initially found disabled. Accordingly, the judgment of the district court is REVERSED and this case is REMANDED to the district court with directions to remand to the Secretary for reinstatement of the benefits initially granted.