**Willie Mae GIST, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,
Defendant-Appellee.**

**No. 82–1895.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 10, 1984.

Decided June 8, 1984.

Rehearing and Rehearing En Banc
Denied Aug. 13, 1984.

Susan McParland (argued), Wayne County Neighborhood Legal Services, Inc., Detroit, Mich., for plaintiff-appellant.

Leonard R. Gilman, U.S. Atty., L. Michael Wicks (argued), Asst. U.S. Atty., Detroit, Mich., for defendant-appellee.

Before KENNEDY, MARTIN and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

Willie Mae Gist appeals an order of the district court upholding the Secretary's decision to terminate Gist's Supplemental Security Income (S.S.I.) benefits. We affirm.

### I.

Gist was "grandfathered" into the federal S.S.I. program on January 1, 1974,[1] pursuant to 42 U.S.C. § 1382c(a)(3)(E). That statute provides:

> [A]n individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

Gist had apparently been determined to be disabled under the state plan prior to July 1973, although the record before us is absolutely devoid of any evidence concerning the initial determination of disability.

■ On April 16, 1980, Gist received notice that the Secretary had determined that her condition was not disabling as of March 1980.[2] Gist appealed this decision to an Administrative Law Judge (ALJ). The ALJ found that Gist did not meet either the

---

1. The S.S.I. program was formerly administered by the states under financial grants from the federal government under title XIV. As of January 1, 1974, title XIV was repealed and replaced by a new title XVI, under which the federal government undertook complete responsibility for S.S.I. benefits to the disabled. *See* Social Security Amendments of 1972, Pub.L. No. 92–603, § 301, 1972 U.S.Code Cong. & Ad.News 1548, 1715 (adopting amended title XVI); *id.,* § 303, 1972 U.S.Code Cong. & Ad.News 1737 (repealing title XIV effective January 1, 1974). *See generally Wheeler v. Heckler,* 719 F.2d at 595, 597 (2d Cir.), *reh'g denied,* 724 F.2d 262 (1983); *Finnegan v. Matthews,* 641 F.2d 1340, 1342 (9th Cir.1981).

2. The notice stated, in part:

> You were found disabled as of 1/1/74. Current medical evidence reveals that you have the ability to perform normal daily activities without significant restriction. You are somewhat overweight, but are able to walk and move around without restriction. You have had problems with anemia and thyroid, but these problems are controlled. Because your medical problems are not causing significant restrictions, your disability payments must cease.

state or federal definition of disability.[3] Specifically, the ALJ found that Gist "is not precluded from engaging in useful occupations she is otherwise qualified to perform and is able to care for her daily needs without assistance." This finding removed Gist from the state plan's definition of disability. As to the federal definition of disability, the ALJ found that Gist had no "severe impairment," a requirement for disability under the federal definition. *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(c) (1983).

As noted above, there is no medical evidence in the record from Gist's initial determination of disability. The most important medical evidence in the record is the reports of two doctors, Dr. Spitz, Gist's treating physician, and Dr. Shapiro, who examined Gist as the request of the Secretary. There are also several hospital reports in the record.

Dr. Spitz's reports indicate that Gist has suffered from pernicious anemia, high blood pressure, thyroidism, and lower back pain. Dr. Spitz, Gist's treating physician, indicated that her pernicious anemia, high blood pressure, and thyroid condition were all controlled through medication. Dr. Spitz, however, diagnosed her back pain as "advanced degenerative joint disease of the spine" although he did not indicate what physical limitations this condition might cause.

Dr. Shapiro performed a physical examination and radiological examination on Gist. Following these examinations, Dr. Shapiro made the following conclusions:

The clinical findings are not impressive as to indicate a definitive clear-cut affliction to the lower back. The patient exhibits a full range of motion in the lumbar spine. She shows no motor or sensory deficit in the lower extremities. Mrs. Gist shows a considerable amount of obesity, and such is superimposed upon moderately advanced degenerative arthritis.

The patient does have symptoms which, in the opinion of this examiner, would periodically persist until she loses a considerable amount of weight. The degenerative arthritis is not a particular factor in this instance.

Mrs. Gist does not exhibit any signs of a disc herniation, with or without nerve root compression.

I rate her ability to stand, sit, walk, squat, kneel, bend, walk up or down stairs, not particularly limited if performed intermittently. The patient's ability to grasp, lift and carry is rated at 10–15 pounds with no adverse effect upon the back.

Various elements pertaining to a person who is found to be disabled, are missing. This is not only in regards to clinical findings, but also in regards to the fact that at no time did she require, seek, or obtain medical attention.[4]

Gist entered the North Detroit General Hospital for lower back pain in April of 1979. The hospital reports indicate, however, that the back pain was brought on by Gist's helping her daughter move furniture. Radiology reports indicated "moderate degenerative arthritic changes" in the lumbar spine. The general diagnosis was a "low back strain." Upon discharge, Gist was said to be doing "extremely well." Gist also entered the Henry Ford Hospital several times in late 1979 and early 1980. The record indicates that her first visit to the hospital was caused by her running out of her thyroid medication. A subsequent report indicated that Gist related a history of not taking her thyroid medication regularly. Gist also entered St. Michael Hospi-

---

**3.** Grandfathered claimants may, of course, maintain their entitlement to benefits by showing that they meet either the federal definition of disability contained in 42 U.S.C. § 1382c(a)(3)(A), (B), (C), (D), or continue to be disabled under the state plan's definition. *See Wheeler v. Heckler,* 719 F.2d 595, 597 (2d Cir.), *reh'g denied,* 724 F.2d 262 (1983).

**4.** Gist is five feet, five and one-half inches tall and her greatest reported weight was slightly over 200 pounds. To meet the Listing of Impairments in Appendix 1, Gist, at her present height, would have to weigh approximately 270 pounds. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 10.10 (1983).

tal in Milwaukee, Wisconsin in April of 1980 for "nonspecific chest discomfort and palpitations." Gist was diagnosed as having cholelithiasis (gallstones), pernicious anemia and iron deficiency anemia. Gist was given medication for the anemic condition. The hospital reports indicates that her condition on discharge was "improved" and that her prognosis was "good."

Gist's prior work is limited. She had worked as a kitchen helper and had also performed domestic work. Gist has an eighth grade education.

## II.

Gist's main argument on appeal is that her termination should have been evaluated under the "medical improvement" standard and not under the "current disability" standard. She argues that even though the ALJ stated that he found "sufficient medical improvement" to terminate benefits, he did not actually apply this standard.

The appropriate method of evaluating the evidence in termination cases is a matter which has sparked a great deal of litigation. *See, e.g., Dotson v. Schweiker,* 719 F.2d 80 (4th Cir.1983); *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983); *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982); *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982); *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir.1981); *Crosby v. Schweiker,* 650 F.2d 777 (5th Cir.1981) (per curiam); *Weber v. Harris,* 640 F.2d 176 (8th Cir. 1981); *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996 (1st Cir.1975). A panel of this circuit has recently considered this question in a case involving the termination of Social Security Disability Benefits. That panel held that the Secretary is required to "produce evidence that the claimant's condition has improved, and in the absence of such evidence the claimant will be deemed to be still disabled." *See Haynes v. Secretary of Health and Human Services,* 734 F.2d 284 at 288 (6th Cir.1984). *Haynes,* however, did not involve S.S.I. benefits or a claimant who was grandfathered into the program. Only two cases have addressed the appro-

priate standard for termination as it applies to grandfatherees. *See Wheeler v. Heckler,* 719 F.2d 595 (2d Cir.), *reh'g denied,* 724 F.2d 262 (1983); *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981).

The Ninth Circuit in *Finnegan* was faced with a problem slightly different from the one now before this court. In *Finnegan,* the Secretary argued that the prior state determination of disability was entitled to no weight whatsoever. It argued that it could make an "initial determination" on a grandfatheree's disability. *See* 641 F.2d at 1343. The Ninth Circuit rejected this approach, holding that "benefits to a grandfatheree must not be terminated absent proof of a material improvement in his medical condition or of the commission of a clear and specific error during the prior state determination." *Id.* at 1347.

In contrast to the situation in *Finnegan,* the Secretary does not now argue that the prior determination is entitled to no weight. The regulation which governs the termination of benefits of grandfatherees provides, in part:

> *Persons who were found disabled under a State plan.* If you became entitled to benefits because you were found to be disabled under a State plan, we will find that your disability ended in...
>
> (1) The month in which your disability, as shown by current medical or other evidence, does not meet the criteria of the appropriate state plan ....

*See* 20 C.F.R. § 416.994(e) (1983). Although this regulation does not clearly establish a standard for termination, the notice which accompanied its promulgation does:

> At one time we would not find that disability or blindness had stopped unless the medical evidence showed that the person's condition had *improved* since we last determined that he or she was disabled. About three years ago we changed this policy and began to find, *on the basis of new evidence, that the person was not disabled or blind as defined in the law.*

*See* 45 Fed.Reg. 55,566, 55,568 (Aug. 20, 1980). According to the regulations, the Secretary will not terminate a grandfatheree's benefits merely upon a reevaluation of the same evidence used in the prior determination. Rather, the Secretary relies on "new evidence" to terminate a grandfatheree.[5] *Finnegan* is thus distinguishable from the present case.

In *Wheeler*, the district court had ruled that because of the difficulty of ascertaining the state definition of disability, a grandfatheree's benefits could not be terminated absent evidence of medical improvement or clear error in the initial determination. *See Wheeler v. Heckler*, 547 F.Supp. 599, 609–10 (D.Vt.1982). The Second Circuit rejected this approach:

> [S]uch a standard, requiring extensive retrospective consideration of facts, is not the one Congress enacted. Instead, Congress preferred an assessment of only the grandfatheree's current condition, requiring a retrospective look only to ascertain the prior state standard in those situations where it was more beneficial to the claimant than the new federal standard. It is only the prior state standard, and not the claimant's disability status under that standard, that has been grandfathered.

*Wheeler*, 719 F.2d at 601.

Despite the Second Circuit's apparent rejection of the district court's adoption of the *Finnegan* standard, the court later limited its holding on a petition for rehearing. The Second Circuit, in responding to the contention that the earlier ruling "forecloses consideration of any role for the concept of 'medical improvement' in disability termination cases," stated that:

> What sort of record will meet the "substantial evidence" test in termination cases, whether the Secretary bears some burden of producing evidence of medical improvement after a beneficiary has presented evidence that the medical condition underlying the prior determination has continued ... and whether a burden of persuasion remains with the beneficiary are issues that were not presented and not decided on this appeal.

*Wheeler*, 724 F.2d at 263 (citation omitted). Given this statement by the Second Circuit in denying the petition for rehearing, it is difficult to determine what *Wheeler* stands for.

That *Haynes* did not involve grandfatherees, that *Finnegan* is also distinguishable and that *Wheeler* is a precedent of uncertain scope does not mean that we are left without guidance. On the contrary, we find *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) dispositive.

In *Campbell*, the Supreme Court considered an attack on the medical-vocational guidelines, more commonly known as the "grid." In upholding the Secretary's use of the grid, the Court articulated a standard of review which applies to this case:

> Where, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious.

461 U.S. at ——, *Id.* at 1957 (footnote omitted).

In the present case, Congress has expressly delegated the responsibility for promulgating regulations on this matter to the Secretary. 42 U.S.C. § 1383(e)(1)(A) provides:

> The Secretary shall ... prescribe such requirements with respect to the filing of

---

**5.** It should be noted that one of the principal concerns of several of the cases which require the Secretary to show "medical improvement" in nongrandfatheree cases is that the Secretary should not be allowed to merely reevaluate the evidence used at the prior determination. *See, e.g., Dotson*, 719 F.2d at 81 (the Secretary argued that it should be allowed to "have another physician review the medical evidence that was previously held to be sufficient to support an award of benefits, and interpret that same evidence to support a later determination that the claimant's disability had ceased"). This is simply not a concern under the current regulation or under the facts of this case.

applications, *the suspension or termination of assistance,* the furnishing of other data and material, *and the reporting of events and changes in circumstances,* as may be necessary for the effective and efficient administration of this subchapter.[6]

■ Since Congress has delegated this authority to the Secretary, our review is "limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." We conclude that the regulations do not exceed the Secretary's authority and are neither arbitrary nor capricious.

The crucial statutory provision relating to grandfatherees is § 1382c(a)(3)(E). It provides that a grandfatheree is entitled to benefits only "so long as he is continuously disabled ...." The Secretary's regulations are entirely consistent with the plain language of this statutory provision. If new evidence indicates that a claimant is not currently disabled, he is necessarily not "continuously disabled." Moreover, the Secretary's practice is particularly appropriate in light of problems specific to grandfatheree cases. In the present case, there is no record of the initial determination. The Secretary asserts that this situation is not uncommon. Were the Secretary required to show strict "medical improvement," such as the remission of a malady or its correction or amelioration through surgery or medication, Gist could never be removed from the S.S.I. program because there is no record of what her earlier condition was. That is, it would be impossible for the Secretary to demonstrate an advancement in her condition from one point to another point because it is not known what her condition was at the initial point. Allowing a claimant to receive lifetime benefits would clearly be contrary to Con-

gress' command that a grandfatheree receive benefits only "so long as he is continuously disabled."

### III.

■ Turning to the evidence presented in this case, we find that the Secretary's decision was supported by substantial evidence. Gist's own treating physician, Dr. Spitz, reported that her anemia, high blood pressure and thyroid condition were under control. Dr. Shapiro's report supports the conclusion that her back problem is not a severe impairment and Dr. Spitz's report says nothing to the contrary. When Gist did need hospital treatment for her back, it was brought on not simply by the severity of her affliction, but rather by her having helped her daughter move furniture. Similarly, the hospital treatment she received for her other conditions were occasioned by a need to adjust her medication. These elements of the record provide substantial evidence that Gist did not have a "severe impairment" under the federal standard, *see* 20 C.F.R. § 416.920(c) (1983), and that, under the state standard, she was not "substantially precluded from engaging in useful occupations" or "unable ... to carry on the minimum activities essential to daily living."

■ We find no merit in Gist's contention that the sequential procedure for evaluating disability, under which no further inquiry is necessary if a claimant is determined not to have a severe impairment, *see* 20 C.F.R. § 416.920(a) (1983), is improper. The requirement that an impairment be severe flows directly from the statute. *See* 42 U.S.C. § 1382c(a)(3)(B). Since the severe impairment requirement is an absolute one, in that if a claimant lacks a severe impairment he can receive benefits under no conceivable set of facts, there is no need for the Secretary to consider other factors,

---

**6.** Additionally, 42 U.S.C. § 1383(d)(1) incorporates 42 U.S.C. § 405(a) into title XVI by reference. Section 405(a) provides:

> The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

such as age, education and vocational skills, if this crucial element is lacking.

We also conclude that the ALJ properly evaluated Gist's complaints of pain. Although pain may be so severe that it is disabling, *see Glass v. Secretary of Health, Education and Welfare*, 517 F.2d 224, 225 (6th Cir.1975), the opportunity of the ALJ to observe the claimant and determine the credibility of her testimony as to pain should not be lightly discarded. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir.1981). In the present case, the ALJ relied on the fact that during the period that Gist claimed she was in severe pain, she was regularly traveling on a bus between Milwaukee, Wisconsin and Detroit, Michigan. The ALJ also relied upon the fact that Gist's testimony about pain was not well supported by the medical evidence. These were permissible factors for the ALJ to rely upon and we find no basis for overturning his credibility determination.

In conclusion, we find that the Secretary evaluated Gist's termination under the proper standards and that substantial evidence supports the Secretary's decision to terminate Gist's benefits. Accordingly, the judgment of the district court is AFFIRMED.