787 F.2d 591
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DENISE KRAAI, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-1074
 United States Court of Appeals, Sixth Circuit.
 3/26/86
 
 REMANDED
 W.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
 Before: LIVELY, Chief Judge; WELLFORD, Circuit Judge; and, PORTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff applied for disability benefits on November 10, 1981. The Social Security Administration denied her initial application and her application for reconsideration. Plaintiff then requested and received a de novo hearing on her claim from an Administrative Law Judge (ALJ). The ALJ found that plaintiff had been disabled only through February 6, 1980, and that she did not meet the special earnings requirements of the Act after March 31, 1980. Since plaintiff had not applied for benefits within twelve months from the time he found her disability ceased, he denied any benefits. The Appeals Council declined to review the ALJ's decision on February 11, 1983. The district court affirmed the Secretary's denial of benefits.
 
 I.
 
 2
 At age twenty-six plaintiff injured her left knee in an automobile accident on January 28, 1979. Following the accident she had surgery that involved placement of pins in her knee. Plaintiff received postoperative hospitalization after which the pins were surgically removed. She was bedridden for four months following the accident and used crutches for an additional six months. Since the accident she has continued to receive physiotherapy and currently is prescribed a knee brace.
 
 
 3
 Plaintiff testified at her hearing before an ALJ in August 1982 that her condition had remained about the same for the past few years. She testified she sometimes needs help to get out or bed, that sometimes she falls because her knee will not support her and that she uses an electric cart when shopping. She testified further that she cannot pick up a ten pound bag of sugar or walk more than a block without pain. She takes various medications for the pain and cannot comfortably sit more than one half hour without moving around to ease the pain and sometimes ascends stairs on her backside. Some days she is bedridden due to her knee problem. Plaintiff's mother, husband, and two friends generally corroborated this testimony.
 
 
 4
 On the other hand, plaintiff conceded that she can do light housework. This capability includes washing dishes and dusting, but not cleaning the bathtub because of the bending required. Although she drives a car, she cannot use a clutch in her husband's truck. She can and does go sailing and participates in some social activities and activities with her children.
 
 
 5
 During the period between plaintiff's accident and February 6, 1980, the condition of her knee gradually improved and the impairment diminished. She gradually regained complete extension and increasing flexion of her knee. In July 1980 she began using a knee brace with good success. She had no limp. Dr. McCall's notes on plaintiff following her accident and surgery suggest slow but continued progress. He also noted her persistent complaints of pain and that plaintiff was not making sufficient efforts toward physical rehabilitation. Dr. McCall's notes state that after ten months of postoperative visits plaintiff could lift up to thirty pounds from a thirty degree flexed position. Over a period of one year plaintiff's range of motion improved from 30 to 135 degrees of flexion. In February 1980 Dr. Abeshaus noted plaintiff had improved because her pain had decreased, but nonetheless the pain continued to be severe and to interfere with her daily activities.
 
 
 6
 Dr. Rothacker treated plaintiff and prescribed a knee brace in July 1980. He noted 'very good relief of her symptoms' because of this brace in October 1980. He noticed she no longer had a limp. He prescribed vigorous physical therapy.
 
 
 7
 Dr. Jarka saw the plaintiff in April 1981. He examined her knee through arthroscopy. In a December 1981 letter Dr. Jarka revealed that plaintiff only wore her knee brace intermittently. He also stated her main problem was degenerative change in her knee. He noted her complaints of pain. He prescribed that she wear her brace and continue strengthening exercises. Later in 1982 Dr. Jarka stated he did not think plaintiff could engage in substantial gainful activities and advised that she avoid prolonged standing and walking, which caused stress on the knee.
 
 II.
 
 8
 The ALJ concluded that the medical evidence concerning plaintiff's condition after February 1980, and until the end of her eligible period, March 31, 1980, did not suggest plaintiff had a severe impairment under the disability regulations. The ALJ reasoned plaintiff did not have a disability because, among other things, she could take care of her personal needs, do light housework, and drive a car. He stated that no medical evidence in the record arising after February 1980 contains objective findings of an impairment capable of producing severe pain. He found plaintiff's complaints of pain were not 'totally credible.' The ALJ noted that plaintiff's treating physician, Dr. Jarka, had concluded plaintiff could not perform substantial gainful activity in 1982, but the ALJ found that the medical evidence does not support Dr. Jarka's conclusions. He conceded evidence demonstrated that plaintiff cannot walk or stand for prolonged periods. It is not clear, however, whether and to what extent the Secretary considered medical evidence after March 31, 1980, the date he found her earnings eligibility to cease.
 
 III.
 
 9
 The essential question is whether substantial evidence supports the ALJ's finding that plaintiff did not have a severe impairment during the relevant period. Under 42 U.S.C. Sec. 405(g), '[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..' The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We may not overturn the Secretary's findings unless this panel determines that substantial evidence does not support those findings. Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert denied, 461 U.S. 957 (1983). We may not overrule the Secretary merely because we would reach a different decision based on the same evidence.
 
 
 10
 In Haynes v. Secretary of Health and Human Services, 734 F.2d 284 (6th Cir. 1984), this court ruled the Secretary has the burden of coming forward with evidence to show that a claimant's condition has improved when the Secretary had determined that claimant suffered previously from a disability. While claimant has the initial and ultimate burden of persuasion on the issue of disability, the claimant is entitled to a presumption of disability once she has established a disability. The Secretary must then produce evidence showing the claimant has improved to the extent she is no longer disabled within the meaning of the law. The claimant, however, retains the burden of persuasion. She must rebut the Secretary's evidence of improvement. Id. at 287-88.
 
 
 11
 We find that substantial evidence does not support the ALJ's determination that as of February 1980 plaintiff's impairment was no longer sufficiently severe to qualify for disability benefits. We acknowledge that the medical evidence regarding plaintiff's February 1980 condition does show plaintiff's condition had improved but we are not satisfied that plaintiff's impairment was no longer severe as of that date.
 
 
 12
 We base this doubt on the inconsistency between the ALJ's findings regarding plaintiff's condition between January 1979 (the time of the accident) and February 1980, and her condition thereafter. The support the ALJ has for his finding of no disability as of February 1980 is the absence of medical evidence that specifically indicates plaintiff's impairment is severe or medical evidence that supports her claims of debilitating pain as an expected complication of her knee injury. But the ALJ's finding of disability for the period before February 1980 rests on medical evidence that also lacks specific findings of disability. It is not clear from the record that plaintiff's condition changed significantly after February 1980. Her complaints of pain persisted. It is unclear why plaintiff's complaints of pain stopped being credible after February 1980. The ALJ found that although plaintiff was not disabled at the time of the hearing she nevertheless could not perform activities requiring prolonged standing or walking. The ALJ should consider whether plaintiff may be severely impaired under step two of 20 C.F.R. Sec. 416.920 (1985). Determination under step two whether plaintiff had a severe impairment requires consideration of plaintiff's ability to perform 'basic work activities.' Basic work activities are partially defined in terms of physical functions, including walking and standing.
 
 
 13
 Accordingly, we remand this case to the district court with directions to remand it to the ALJ to determine whether plaintiff continued to have a severe impairment on November 10, 1980. If plaintiff had a severe impairment for a continuous twelve months which did not cease prior to twelve months before her November 10, 1981, application for disability benefits, 20 C.F.R. Sec. 404.320(b)(3) (1985), then the ALJ should apply the remaining steps in the sequential analysis under the regulations to determine whether plaintiff is entitled to disability benefits,[1] 20 C.F.R. Secs. 404.1520; Kirk, 667 F.2d at 528.
 
 
 
 *
 The Honorable David S. Porter, Senior United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The ALJ is entitled to consider the legal significance of plaintiff's lack of commitment to her rehabilitation program. See Kraai v. Secretary of Health and Human Services, No. K83-135 CA, slip op. at 3-4 (W.D. Mich. Sept. 4, 1984)