798 F.2d 468
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas L. BERRY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-3343.
 United States Court of Appeals,
Sixth Circuit.
 June 30, 1986.
 
 Before JONES and WELLFORD, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Thomas L. Berry appeals a summary judgment affirming the Secretary's decision denying disability benefits. Two arguments are raised by Berry for our review: (1) that the Administrative Law Judge improperly rejected the medical opinions and diagnosis of Berry's treating physician; and (2) that the ALJ erred in rejecting his complaints of disabling pain. On review of the record, we agree with Berry and reverse and remand for the award of benefits.
 
 
 2
 Berry was a thirty-five year-old man at the time of the hearing and had only an eighth grade education. He filed an application for disability benefits and supplemental security income on January 27, 1982 alleging an onset of disability as of January 3, 1982 due to "back, hardening of arteries, land] arthritis." He underwent surgery on two separate occasions in 1978 and 1980 for complications with his right hip. Also in 1980 he was admitted, to the hospital for surgery resulting from a gunshot wound to the chest area. On January 4, 1982, Berry went to the hospital emergency room complaining of pain in the lower thoracic area of the back and in the right upper shoulder. X-rays showed minor degenerative changes with no acute vertebral pathology present. In addition, a bullet was lodged in the mid-right lumbar area posteriorly. The hospital's reviewing doctor's impression was that Berry's x-rays showed degenerative changes in the lumbosacral spine.
 
 
 3
 Dr. Donald Siehl, Berry's treating phyician, conducted a thorough orthopedic examination of Berry on January 12, 1982 and reviewed the X-rays taken earlier. He noted that the x-rays showed "some questionable early degenerative change in the sacroiliac joints" and "degenerative change on the anterior vertebral margins between L2 and L3, and between L3 and L4"; but "the lumbar spine I was] otherwise within normal limits." Dr. Siehl listed his diagnosis as. "Lumbar and sacral somatic dysfunction and myofibrositis with degenerative joint disease of the spine --a poor mechanical low back."
 
 
 4
 Manipulation of the lumbar spine and sacroiliac joints under general anesthesia was performed in March 1982. Although Dr. Siehl reported the prognosis as good following the surgery, the diagnosis remained the same. Dr. Siehl submitted an office note dated July 2, 1982, which indicated that Berry continued to receive occasional osteopathic manipulation at that time and that Berry continued to "sustain periodic exacerbations of symptoms if he attempts to do anything much at all." The note concluded that Berry "must avoid any undue stress on the low back." Dr. Siehl completed a physical capacities evaluation, dated July 26, 1982, opining that Berry would be unable to do any type of light or sedentary work on a sustained basis. In a letter dated July 29, 1982, Dr. Siehl indicated that Berry would continue to be disabled until at least the end of January 1983, and probably longer based on his present response to treatment. Finally, in an orthopedic examination report, dated April 8, 1983, Dr. Siehl reiterated his initial medical findings and also provided a recommendation that Berry receive further office osteopathic manipulative treatment, and that he should limit his activities. Dr. Siehl, again, opined that Berry was totally disabled.
 
 
 5
 A second physician examined Berry on May 28, 1982 and took additional x-rays. Dr. Burt Schear noted that the x-rays of the lumbar spine showed a bullet to the right and posterior to the third lumbar vertebrae and a questionable fracture through proximal femur. He prescribed medication for severe pain and advised Berry to practice Williams Back Exercises.
 
 
 6
 The ALJ concluded, based on the evidence, that Berry's only severe impairment resulted from total hip replacement. He held, however, that Dr. Siehl's opinions of total disability could not be accorded considerable evidentiary weight due to the lack of clinical findings. Based on his own assessment of the objective clinical findings, the ALJ found that Berry had only mi] d degenerative changes of the spine, and normal range of motion in the hips, despite his hip surgery. As a result the ALJ concluded that Berry retained the residual capacity to perform at least light work activity. As for Berry's allegations of pain, the ALJ found these complaints to be not credible in light of the medical evidence, and exaggerated because of Berry's testimony regarding his ability to spend his recreational time "walking around shopping centers." The ALJ finally concluded that Berry was "not disabled" under Rule 202.17 and 202.18, Table No. 2 Appendix 2, Subpart P, Regulation No. 4. That decision was affirmed by the Appeals Council and became the final decision of the Secretary. The district court subsequently granted the Secretary's motion for summary judgment, affirming the Secretary's decision.
 
 
 7
 The arguments raised by Berry in this case are identical to the issues treated in a recent opinion in this circuit, Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). The court in Harris noted the deference to be accorded the medical opinions and diagnosis of a claimant's treating physician. These medical opinions and diagnosis are "generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." 756 F.2d at 435; King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Deference need only be accorded, however, if the physician's opinion is based on sufficient medical data. Harris, 756 F.2d at 435. The Harris court also recognized that the ultimate "determination of disability is the prerogative of the Secretary, not the treating, physician." Id., Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984). 2
 
 
 8
 The medical opinion and diagnosis of the treating, physician in Harris, although of a slightly different nature, are a helpful illustration in our disposition of this case. Over a two year period, the physician's examinations in Harris showed that the claimant could not stand due to lower back pain. The initial diagnosis was that the claimant was suffering from, inter alia, osteoarthritis of the lumbar spine and in both knees. As a result of these examinations, the physician concluded in 1979 that the claimant was 100 per cent disabled. The physician reached the same conclusion in 1980 after an examination disclosed that the claimant's condition was worsening. These conclusions were also supported by x-rays taken in 1977, which failed to show any signs of degenerative arthritis in the knees, but the spine x-ray revealed a slight straightening of the curve and minimal anterior lippings of the lumbar vertebrae. Because the physician was the claimant's treating physician and conducted a series of physical examinations over several years, the court thought he was in a unique position to evaluate the claimant's condition. Thus, the court ruled that the physician's opinion that the claimant was "incapable of engaging in other gainful employment and that he was 100 percent disabled must be given significant weight by the court." 756 F.2d at 435. Relying on this opinion and the medical opinions of other physicians, the court ruled that the medical evidence showed the claimant incapable of performing sedentary work.
 
 
 9
 We believe that significant weight should also be accorded Dr. Siehl's opinions in this case. As in Harris, nothing in the record contradicts Dr. Siehl's opinion that Berry is totally disabled. Dr. Siehl conducted a number of examinations over the course of a year and each time his diagnosis was that Berry suffered from "lumbar and sacral somatic dysfunction and myofibrositis with degenerative joint disease of the spine." Contrary to the ALJ's conclusion, this diagnosis was supported by clinical findings. X-rays did show that Berry suffered from some degenerative changes in the spine. The only other physician to examine Berry, Dr. Schear, did not render any diagnosis to contradict Dr. Siehl's opinions; if anything, Dr. Schear's findings corroborated those of Dr. Siehl. It is also significant that the record is devoid of any reference to medical findings made by a physician furnished by the Secretary. We can only conclude that Dr. Siehl's medical opinions and diagnosis are uncontradicted and his opinion that Berry is totally disabled must be given complete deference. Based on the medical evidence in the record, we are thus persuaded that Berry's impairment prevents him from engaging in any work activity.
 
 
 10
 We are also persuaded that the ALJ improperly discounted Berry's . complaints of pain. Berry testified at the hearing that he was unable to work due to sharp pains in his lower back. He also testified that he is unable to lift more than ten pounds, sit for more than two hours, walk for more than three or four blocks, or stand for more than one to one and one-half hours. Additionally, he is unable to do any bending, stooping or squatting. His recreational activities included walking around K-mart for half an hour and watching TV.
 
 
 11
 This circuit has already established that pain alone, if the result of a medical impairment, may be sufficient enough to constitute disability. See Kirk v. Health and Human Services, 667 F.2d 524, 538 (6th Cir. 1981), cert. denied 461 U.S. 957 (1993). Where there is uncontradicted medical evidence corroborating the complaints of pain, the ALJ cannot reject a claimant's testimony regarding pain merely on the basis of credibility. Harris v. Heckler, 756 F.2d at 436; King v. Heckler, 742 F.2d at 974-75. The ALJ found that the medical evidence belied Berry's complaints of pain. But as we have concluded earlier, there is uncontroverted medical evidence to support Berry's complaints of pain. Moreover, the record shows that the ALJ's finding that Berry's complaints of pain were exaggerated because he spent his recreational time walking around a shopping center was based on a misconstruing of the testimony. The substance of Berry's testimony was that he sometimes walked around "K-mart or something for about a half hour". Were the testimony as the ALJ described it, we may have been be inclined to agree that Berry's complaints of pain were exaggerated. However, we do not believe that testimony that Berry walks around for half an hour reasonably leads one to the same conclusion.
 
 
 12
 We therefore conclude that the Secretary's finding that Berry is not disabled is not supported by substantial evidence. Based on the record before us, Berry is incapable of performing sedentary or light work. Accordingly, the district court's summary judgment is REVERSED and the case is REMANDED with instructions to further remand to the Secretary for the award of benefits.
 
 WELLFORD, Circuit judge, dissenting:
 
 13
 Plaintiff in this case was only 35 years old at the time of the hearing and claimed disability due to back and other problems. At the conclusion of the hearing before the administrative law judge (ALJ), Berry's attorney argued only the back condition and that his client suffered serious pain as a consequence, acknowledging no psychological overlay.[1] Dr. Siehl made it clear in 1982 that the patient "recovered satisfactorily" from a "severe gunshot wound" in 1980, and that Berry reports "little or no residual at this time from either the abdominal problems, the chest problems or the right hip problem." The majority seems to base its reversal, then, on the opinion of the treating physician, Dr. Siehl, which may be summarized by the last words in his January 1982 report that Berry suffered from "a poor mechanical low back," and this precluded him from engaging in sustained employment.
 
 
 14
 Dr. Siehl's diagnosis followed an examination of radiographs of the lumbar spine and sacroiliac joints which demonstrated "some questionable early degenerative change in the sacroiliac joints although these are not well visualized." (Emphasis added). He also noted, secondarily, "degenerative change on the anterior vertebral margins," but added that the "umbar spine is otherwise essentially within normal limits." He recommended some office follow-up manipulative procedure with respect to the low back.[2]
 
 
 15
 Dr. Siehl performed manipulative procedures on Berry's back under general anesthesia in March, which was carried out satisfactorily with improvement observed, and Berry "did not ask for anything for pain." The prognosis was good. In July 1982, Dr. Siehl advised Berry, after several episodes of back problems, that he "avoid undue stress on the low back." Despite a finding of ability occasionally to lift up to 10 pounds and ability to stand/walk, sit, or alternatively sit or stand for from 2-1/2 to 4 hours in each category, Dr. Siehl found, in September 1982, without further explanation, no residual functional ability to work an eight hour day on a sustained basis.
 
 
 16
 Dr. Schear, a family practitioner, wrote plaintiff's attorney that after a May 1982 x-ray of Berry's lumbar spine, without making any specific finding, that he advised Berry "to practice Williams Back exercises." This report does not, it seems to me, either support or contradict Dr. Siehl's objective findings. It merely indicates that Berry was then complaining about back pain.
 
 
 17
 Dr. Siehl did not see or treat Berry from November, 1982, through April 1983.[3] On the latter occasion Dr. Siehl found for the first time that Berry believed his back problem began with an automobile accident in 1978, but that Berry had worked for years after the accident and had not sought medical treatment for any back condition. His conclusion was that Berry had "some limitation on activity" and should "limit excess lifting, bending, twisting, pushing, pulling, and long periods of sitting and standing" (emphasis added). He made no further x-rays. He did not say what he felt would be "excess" lifting or other activity or whether that precluded light or sedentary work.
 
 
 18
 Berry's onset of pain in the low back began in January of 1982. Except for his "chief complaint" of "pain in the low back," Dr. Siehl at that time ultimately concluded "the inventory of systems is essentially negative" (emphasis added). Dr. Siehl in January 1982 found no specific history about any back injury and observed then that Berry "gets along quite well standing and walking." He further noted that except for a degenerative change in two vertebral margins that the "lumbar spine is essentially within normal limits."
 
 
 19
 The majority finds no substantial basis for the Secretary's finding that Berry was capable of light or sedentary work, and therefore overturned the report of Magistrate Steinberg and the decision of District Judge Rice, which affirmed the Secretary's decision. Based primarily on Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985), which it found "identical to the issues treated," the majority disagrees with each prior factfinder. In Harris, however, the claimant was 47 years old and claimed a disabling pulmonary condition (pneumoconiosis), as well as a disabling back condition, after working in coal mines for over 27 years. He had been awarded Black Lung benefits and Workmen's Compensation for these disabling conditions. The majority on the Harris panel found, despite a vigorous dissent, "a complete absence of evidence in this record that [claimant] is capable of doing sedentary work." 756 F.2d at 435. In Harris, no doctor during the period of alleged disability made a prognosis of "good" or found that treatment was improving his condition (even if only temporarily), and recommended further treatment. No doctor found Harris to be capable of standing and walking for a considerable period, or that he seemed to get along "well standing or walking," or that plaintiff, after treatment, did not ask for pain medication. I do not find Harris to be comparable or controlling because the pulmonary condition alone distinguishes it from the present case.
 
 
 20
 As was recognized in Harris, "[i]t is permissible for the ALJ and the Secretary to conclude that a witness' testimony is not credible, even if it is uncontradicted in the record. Beavers v. Secretary of Health & Human Services, 577 F.2d 383, 386 (6th Cir. 1978)." 756 F.2d at 436. Only if there were "uncontroverted evidence in the record which clearly corroborates a claimant's assertions of pain" would it be error for an ALJ to reject a plaintiff's testimony because of his demeanor. Id. at 436 (emphasis added). There was no clear corroborative evidence in this record that Berry's claims of disabling pain were based on uncontradicted objective medical evidence. The objective descriptions of plaintiff's condition in this case include findings of essential normality in the lumbar and sacroiliac areas with only slight narrowing between several vertebra, It was also acknowledged in Harris that "[u]ltimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician." 756 F.2d at 435 (citing Houston v. Secretary, 736 F.2d 365 (6th Cir. 1984); Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984); and Kirk v. Secretary, 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983) ). The latter case also stands for a proposition, ignored by the majority:
 
 
 21
 Since credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant it is invaluable, and should not be discarded lightly."
 
 
 22
 667 F.2d at 538 (quoting Beavers, 577 F.2d at 387. See also Gist v. Secretary, 736 F.2d 352, 358 (6th Cir. 1984).
 
 
 23
 The record in this case is ambivalent in my view. Clearly, plaintiff suffers no disability that is severe. His own attorney claims no impairment that equals or exceeds the listings. There is no claim that the hip injury or the shooting injury results in any disability. The only claim rests upon a back injury of uncertain origin and a claim of pain in connection with that injury. Plaintiff is a young man, with a varied work experience, who at the time of making his claim was only 34 years old and claimed "hardening of arteries" (about which there was no evidence submitted).
 
 
 24
 At best, in view of plaintiff's burden of proof, the record may indicate that, in light of Dr. Siehl's subsequent report dated April 8, 1983, which was considered by the Appeals Council and not by the ALJ, this matter should be remanded to the ALJ for his further consideration and/or submission of further medical proof.
 
 
 25
 I therefore dissent from the reversal of the district court's decision and what I believe is an unjustified instruction to award benefits on this record.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Berry's attorney conceded at the hearing: "We don't have a diagnosis of an impairment that meets or equals any of the listings under the Social Security Regulations."
 
 
 [2]
 Grandview Hospital's radiology consultant, Dr. Davidson, found a narrowing of one vertebra interspace and a "slight narrowing" of another with "early osteophytic sharpening of the L3 and L4 bodies." In March 1982 Dr. Roberts of St. Elizabeth Medical Center noted "minor degenerative changes L2 thru L4."
 
 
 [3]
 This information from Dr. Siehl conflicts with plaintiff's testimony at the November 17, 1982, hearing before the ALJ that he was seeing the doctor "every other week," and he added that "we're hoping, you know, it'll start clearing up but so far it seems like it's ain't done any, any good yet." This may furnish an inference of exaggeration on the part of Berry, as found by the ALJ