927 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Grover NICHOLS, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 90-5668.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Kentucky, No. 89-60089; Unthank, J.
 E.D.Ky.
 AFFIRMED.
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Grover Nichols, the plaintiff, appeals from the denial of social security benefits by the Secretary of Health and Human Services ("Secretary"). Although Nichols was granted supplemental benefits for some of the time in question, the Secretary has refused to award benefits to Nichols for three time periods during which Nichols maintains he was totally disabled. The issue presented is whether the Secretary's denial of benefits for the three time periods remaining is supported by substantial evidence. Because we find that the Secretary's decision is supported by substantial evidence, we affirm the denial of additional benefits.
 
 I.
 
 2
 In 1973, while Nichols was engaged in construction work, he sustained injuries to the knee and back while on the job. From 1973 to 1982, Nichols received disability payments from the agency. In January of 1982, he was notified that he was no longer eligible for disability benefits. Nichols appealed this determination all the way to the district court, where he lost and the decision became final. The money paid from 1973-82 is not in dispute and the decision to stop payments in January of 1982 is now also not reviewable.[1] On June 30, 1982, Nichols' insured status expired. Insured status is required for an award of disability benefits. See Garner v. Heckler, 745 F.2d 383, 390 (6th Cir.1984). In October of 1984, after the district court's decision upholding the termination in January of 1982 of disability benefits, Nichols applied for disability benefits for the period after January 31, 1982, contending that he was disabled prior to June 30, 1982.
 
 
 3
 In June of 1983, while litigating the issue of disability benefits, Nichols applied for Supplemental Security Income (supplemental benefits). Insured status is not a requirement for supplemental benefits. This claim was initially denied, then an Administrative Law Judge (ALJ) recommended that Nichols receive supplemental benefits. This decision then went to the advisory board, which remanded the case in light of the passage of the Social Security Disability Reform Act of 1984.
 
 
 4
 As stated, in October of 1984, Nichols applied for disability insurance benefits for the period starting January 31, 1982. In order to receive this award, Nichols was required to prove that he suffered a total disability while he still had insured status, from January 31, 1982 to June 30, 1982. The initial hearings concerning this request were vacated and the question remanded because of the passage of the Social Security Disability Reform Act of 1984. The two claims, disability benefits and supplemental benefits, were consolidated.
 
 
 5
 An administrative hearing was held on the consolidated claims in October of 1987. The ALJ's opinion recommended that Nichols' application for disability insurance benefits be denied, holding he was not disabled during the insured period, but that Nichols be granted a limited period on his application for supplemental benefits. The ALJ recommended that Nichols be granted supplemental benefits for the period between June of 1984 and June of 1987. The Secretary adopted the recommended decision.
 
 
 6
 Nichols appealed to the United States District Court for the Eastern District of Kentucky. Nichols alleged that the Secretary erred in denying him disability benefits and in not awarding him all the supplemental benefits that he claimed to be entitled to receive. The district court affirmed in part and reversed in part the Secretary's decision. The district court upheld the administrative decision to deny all disability benefits, holding he was not disabled prior to termination of insured status. The district court held, however, that supplemental benefits should have begun on September 16, 1983 (the date Nichols began treatment for mental problems) instead of on June 9, 1984. The district court upheld the agency decision to cease supplemental benefits on June 27, 1987 because of the improvement in Nichols' mental health.
 
 
 7
 Nichols appealed to this court the district court's denial of benefits, but the agency has not appealed the partial reversal of the Secretary's decision by the district court. The benefits already awarded Nichols are therefore not in issue. Although the procedural history of this case is complex, only three time periods are now in dispute. Each time period must be examined separately to determine whether the agency decision to deny benefits is supported by substantial evidence.
 
 II.
 
 8
 The first time period that requires an examination is that from January 31, 1982 to June 30, 1982. As previously stated, on January 31, 1982, Nichols' benefits were terminated and on June 30, 1982, his insured status expired. The issue is whether Nichols became completely disabled during this five month period. The standard for judicial review is whether there is substantial evidence to support the Secretary's decision that Nichols' condition allowed him to perform substantial gainful activity. Casiano v. Heckler, 746 F.2d 1144 (6th Cir.1984). We must decide whether the Secretary followed the proper standards in adjudicating the claim at issue. McCormick v. Secretary of Health and Human Services, 861 F.2d 998, 1001 (6th Cir.1988).
 
 
 9
 A seven factor test is applied to determine whether a denial of disability benefits is correct. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1985). Only the seventh factor is in dispute in this case:
 
 
 10
 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. If no, the claimant is disabled.
 
 
 11
 The issue of what jobs existed in the national economy that Nichols could perform was addressed by Dean Owen, a vocational expert. Owen testified in response to a hypothetical question concerning Nichols' employment prospects assuming certain disabilities.[2] According to Owen, Nichols could perform 20% of the light and most of the sedentary jobs existing in the national economy.
 
 
 12
 The answer to a hypothetical question is substantial evidence only if the question accurately reflects plaintiff's impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.1987). Nichols attacks the hypothetical question used as unrepresentative of his physical and mental condition. Nichols contends that the evidence supports existence of a psychological condition that was not adequately considered and that the hypothetical question understated his physical problems.
 
 
 13
 Nichols was examined by a multitude of physicians during this time period. He relies heavily upon the opinions of Dr. Musgrave and Dr. Bangudi for his claim of suffering from a totally disabling physical condition. Both Musgrave and Bangudi reported that Nichols was totally disabled. The ALJ, however, rejected these opinions because the doctors failed to support them with medical evidence. Furthermore, all the medical evidence was examined at the request of the ALJ by Dr. O.W. Thompson, an internist. Based on Thompson's testimony concerning Nichols' physical conditions, the hypothetical question to the vocational expert for this time period was formulated. According to vocational expert Owen, an individual with these presumed physical limitations would still be capable of performing numerous jobs that existed in the national economy.
 
 
 14
 Thompson's report concluded, however, that Nichols suffered a disabling mental problem during this time period. The ALJ chose not to accept this conclusion for several reasons. Dr. Hibbard, a psychiatrist, opined that the mental problems were not debilitating. As stated, Thompson was an internist, not a mental health expert. The ALJ may place more weight on the opinion of an expert in the field. Sherrill v. Secretary of Health and Human Services, 757 F.2d 803 (6th Cir.1985).
 
 
 15
 Other mental health experts agreed with Dr. Hibbard. Nichols underwent vocational testing by William Duke, a vocational consultant, and Bruce Albert, a psychologist. Nichols obtained an IQ score of 85. He read at the ninth grade level. In their report, these experts concluded that Nichols could retain new material and had the potential for functioning at a job requiring light work.
 
 
 16
 The ALJ was forced, because of the conflicting evidence from different experts from different fields, to make determinations of credibility. The formulation of the hypothetical question was based on a reasonable analysis of conflicting expert opinions, and, therefore, the ingredients of the hypothetical question were supported by substantial evidence.
 
 III.
 
 17
 The second time period that requires examination is from June 30, 1982 to September 16, 1983. On September 16, 1983, Nichols sought help for mental problems at the Mountain Comprehensive Care Center (MCCC) and was determined to suffer from hallucinations. The district court awarded Nichols supplemental benefits from the time he sought help at MCCC on September 16, 1983.[3] The issue for this time period is whether the evidence establishes that a serious mental problem existed prior to September 16, 1983.
 
 
 18
 Nichols had been examined by MCCC before. On July 7, 1982, Dr. Corazan Chua of MCCC had examined Nichols. Nichols complained of sleep problems, irritability, increased appetite and weight gain, and depressed feelings. The examination showed no signs of any hallucinations or other serious mental disorders. No other medical evidence concerning Nichols' mental health is available from this period.
 
 
 19
 The ALJ formulated a second hypothetical to ask vocational expert Owen concerning this time period. The ALJ asked the expert to assume that Nichols continued to have the physical limitations he had earlier and developed moderate mental limitations after June 30, 1982. Owen testified that even with these physical and mental limitations, Nichols would retain the ability to do many light and sedentary jobs.
 
 
 20
 Nichols contends that this hypothetical failed to consider his decreased mental capacity adequately. Nichols testified that he began to suffer from hallucinations and exhibit violent spells months before he sought help at MCCC. There is no contemporaneous medical documentation of Nichols' alleged mental problems between August 1982, when he stopped going to MCCC, and September 1983, when he returned to MCCC. The agency may reject the onset date alleged by a claimant when it is not adequately supported by the medical evidence in the record. Cornette v. Secretary of Health and Human Services, 869 F.2d 260, 264 (6th Cir.1988). There is no significant objective medical evidence indicating a disabling mental disorder available from this time period. The decision to deny Nichols benefits is supported by substantial evidence.
 
 IV.
 
 21
 The third period that must be examined is the period after June 27, 1987. On June 27, 1987, Nichols' supplemental benefits were terminated because it was determined that his condition had improved. In order for supplemental benefits to terminate, the burden is placed on the agency to show that the claimant's condition has improved. Once an individual is determined to be disabled, there is a presumption that the disability has continued. Haynes v. Secretary of Health and Human Services, 734 F.2d 284, 288 (6th Cir.1984). The standard of review is whether substantial evidence supports the finding of improvement. Casiano v. Heckler, 746 F.2d 1144 (6th Cir.1984).
 
 
 22
 On June 27, 1987, Nichols was examined by Dr. Shelle Dietrich. Dietrich conducted a variety of psychological tests. Her report demonstrates few objective abnormal findings and in addition demonstrates little in the way of functional limitations. Dietrich's report constitutes substantial evidence of an improvement in Nichols' mental condition.
 
 
 23
 It also appears that Nichols' physical condition improved during this period. In July of 1987, Dr. Trotta examined Nichols. Trotta's report indicated little in the way of objective abnormal findings. Trotta stated, however, in his report that Nichols' employment prospects were limited. The ALJ used the reports of Dietrich and Trotta as a basis for a new hypothetical question. Vocational expert Owen testified that under these new, less severe mental and physical limitations, Nichols could perform substantial jobs in the economy. Based on this information, the ALJ's determination of improvement is supported by substantial evidence.
 
 VI.
 
 24
 Because the Secretary's decision to deny Nichols' benefits for the three time periods in question is supported by substantial evidence, we AFFIRM the district court.
 
 
 
 [1]
 Nichols was born on July 14, 1944. He suffers from obesity, with his weight hovering around three hundred pounds. Nichols maintains that he was disabled because of various physical and mental health problems. The severity of these problems at various times in the last nine years is the issue in this case
 
 
 [2]
 The hypothetical question concerning this time period included one of Nichols' age, education, and work experience, restricted by such impairments as only an occasional ability to climb or stoop, an inability to balance or crouch, little ability to kneel or crawl, limited push-pull ability, and environmental restrictions on working around heights or moving machinery, no temperature extremes, and no exposure to chemicals, dust, fumes or humidity
 
 
 [3]
 The ALJ erred, according to the district court, by failing to give appropriate weight to the opinion of Nichols' treating physicians at MCCC. The district court concluded that sufficient evidence existed to mandate a starting date for benefits on September 16, 1983. The agency did not appeal this decision