**Herman J. RICHARDSON,**
**Plaintiff-Appellant,**

**v.**

**Margaret HECKLER, Secretary, Department of Health and Human Services,**
**Defendant-Appellee.**

**No. 83–5410.**

United States Court of Appeals,
Sixth Circuit.

Argued May 9, 1984.

Decided Oct. 18, 1984.

Rehearing Denied Dec. 12, 1984.

L.G. Burnett, Jr. (argued), Nashville, Tenn., for plaintiff-appellant.

Joe B. Brown, U.S. Atty., Robert Washko E. Franklin Childress, Jr. (argued), Nashville, Tenn., for defendant-appellee.

Before KENNEDY and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

The plaintiff-appellant, Herman J. Richardson, appeals from the district court's order of summary judgment which affirmed the Secretary's decision to deny his application for social security disability benefits. Upon consideration of the issues we conclude that the Secretary's decision is not supported by substantial evidence and that Richardson is entitled to receive benefits.

On November 19, 1979, Richardson filed his application for disability benefits alleging an onset of disability in 1951 due to several physical impairments. This claim was rejected at all stages of the administrative proceedings. Upon review of the Secretary's decision, the district court accepted the Secretary's finding that Richardson was not disabled because of any physical problems. That court remanded the matter to the Secretary with instructions to determine if he was disabled because of a possible mental impairment.

Upon remand the Administrative Law Judge (ALJ) determined that the evidence of Richardson's mental condition on the date on which he last met the special earnings requirement was too speculative to support a finding of disability and that, therefore, he had failed to carry his burden of proving a disability within the meaning of the Social Security Act, 42 U.S.C. §§ 301–1397f. The district court affirmed and this appeal followed.

Richardson, a fifty-four year old man with a ninth grade education, has not performed any work in the last fifteen years and, thus, has no vocationally-relevant work experience. *See* 20 C.F.R. § 404.-1565(a). He seeks disability benefits because of emotional and psychiatric problems emanating from his service in the Army during the Korean War. One of his more traumatic experiences during that war came when he carried his injured commander, with whom he had been very close, through enemy lines only to discover that he was dead. His behavior deteriorated steadily from this point, culminating when he went AWOL for eleven months to visit his terminally-ill mother after the Army denied him permission to visit her. He then received a Bad Conduct Discharge in 1953 and from that time until the mid-1970's, he lived the life of a skid row alcoholic.

On January 20, 1953, while still in the Army, Richardson underwent psychological testing. The examiner stated in his report that Richardson made him "very uncomfortable and somewhat fearful" because the clinical impression and testing suggested that Richardson was subject to violent and fast mood shifts. In one of his responses to the Rorschach cards Richardson stated that the inkspot looked like "the brains of my buddy splattered on the ground." Rage and violence were elicited very easily from Richardson and, although he exercised some suppressive control, this control was deemed "very ineffective." The examiner's diagnosis was that Richardson had a "character neurotic disorder" which was exacerabated by combat experi-

ences. He recommended hospitalization for intensive treatment.

A consultation report filed in 1953 by Lieutenant Colonel Joseph Nannarello, a neuropsychiatrist, indicated that Richardson suffered from severe left temporal and frontal headaches that lasted as long as seven days, blackout spells and amnesia spells every two or three months that lasted anywhere from one to fifteen days, and personality changes with irritability and a tendency toward alcoholism. Dr. Nannarello's impressions were of a post-traumatic encephalopathy, CNS lues,[1] anxiety reaction with hysterical fugue-states [2] and pathological personality. He recommended that Richardson be hospitalized and transferred to a neurological center for thorough work-up.

On January 21, 1953, while awaiting court-martial for desertion, Richardson was examined by Dr. H.S. Peyser pursuant to a request for psychiatric examination prior to court-martial. Dr. Peyser noted that Richardson's affect was somewhat flattened and that he reported nervous episodes in which he became so irritable and worried that he went out and attacked people. An earlier diagnosis indicated that Richardson had an antisocial personality with paranoid features, alcoholism and hysterical features. It was also determined that he was suffering from a severe mental illness "not classifiable under psychosis or neurosis, and not rendering him incompetent or insane but more classifiable as a character disorder." Hospitalization was recommended because Richardson was too violent for the stockade.

Dr. Peyser's recommendation is the last medical evidence in the record until 1963 when Richardson was hospitalized with pain in his right knee and left leg. Although Richardson was found to be in excellent physical condition despite a claimed inability to walk, Dr. Barwick opined that Richardson had "a rather serious psychoneurosis," and advised him to seek help at a mental health clinic. Richardson was discharged on March 20, 1963, and Dr. Barwick's final diagnosis was that Richardson had a severe anxiety reaction which was treated but unchanged, and an ulcer, cause unknown, which was also treated and unchanged.

After a 1977 psychiatric evaluation Richardson was diagnosed as suffering from chronic alcoholism, then in remission, and chronic anxiety neurosis with a significant post-combat component.

Richardson was later examined on October 3, 1980, by Dr. Alex Harvey, a psychiatrist. Richardson's mental status examination revealed a tremendous degree of anxiety. He was tense, restless and irritable, and had a somewhat hostile and aggressive personality with poor impulse control. There was no evidence of antisocial behavior or of any distortion of cognitive functioning, but Richardson's coping ability for stress was "very poor." He tended to become very anxious and upset when placed under any kind of mild pressure or tension. Dr. Harvey diagnosed a generalized anxiety disorder but opined that Richardson was competent. On February 12, 1981, he changed his diagnosis to chronic post-traumatic stress disorder.

At the hearing before the ALJ Dr. Harvey described the post-traumatic stress syndrome as a collection of psychiatric symptoms which result from an extremely stressful situation such as combat. This resulted, in Richardson's case, in a diminished capacity to handle any kind of stress and rendered him unable to handle any type of job. Upon examination of Richardson's medical record, Dr. Harvey conclud-

---

**1.** CNS refers to the central nervous system. *T. Stedman, Medical Dictionary* 291 (5th ed. 1982). Lues is defined as "[a] plague, or pestilence; specifically, syphilis." *Id.* at 811.

**2.** Fugue is defined as

[a] period in his past for which a person alleges almost complete amnesia. Habits and skills are usually unaffected. He leaves home and starts a new life with different conduct. Afterward, earlier events are remembered but those of the fugue period are alleged to be forgotten. Validation of the reality of this phenomenon is extremely difficult.

*Id.* at 565.

ed, contrary to his conclusion of October 3, 1980, that Richardson was not, and had never been, competent. He indicated that the mental condition of a person such as Richardson probably would deteriorate with the passage of time.

Our review of the Secretary's decision to deny disability benefits is limited to determining whether substantial evidence supports the decision. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (1976). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In determining whether the evidence is substantial we must " 'take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of H.E.W.*, 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

■ A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972); *accord Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir.1981) (per curiam). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement imposed by the Social Security Act. *See Tremblay v. Secretary of H.H.S.*, 676 F.2d 11 (1st Cir.1982). Richardson last met the special earnings requirement on September 30, 1958. Consequently, he must establish that he became disabled on or before that date. The problem arises in this case because of the ten-year gap in medical evidence from 1953 to 1963, or five years before and after the crucial date. The only evidence relating at all to this period was the testimony of Dr. Harvey who opined that Richardson probably had suffered from post-traumatic stress syndrome since

his service in the army. The ALJ concluded that Dr. Harvey's testimony was too speculative to support a finding of disability because he did not examine Richardson until 1980 which was twenty-two years after he last met the special earnings requirement. We believe the ALJ erred by failing to consider Dr. Harvey's testimony in light of the complete medical record.

■ While it is true that the burden of *persuasion* on the issue of disability always rests with the claimant, the burden of going forward with evidence on the issue shifts between the parties from time to time. For example, once a claimant has presented a prima facie case of total and permanent disability for his usual job the burden shifts to the Secretary to go forward with evidence that the claimant has the residual capacity for substantial gainful activity. *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir.1984). This circuit, however, recently held that the Secretary has the burden of coming forward with evidence that a claimant's condition improved after an initial determination of disability in cases involving the termination of disability benefits. *Haynes v. Secretary of H.H.S.*, 734 F.2d 284, 288 (6th Cir.1984). In so holding we recognized that a presumption of continuing disability arises from the initial determination of disability, and that, in the absence of evidence that the claimant's condition had improved, the claimant would be deemed to be still disabled. *Id.* at 288; *accord Dotson v. Schweiker*, 719 F.2d 80, 82 (4th Cir.1983); *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir.1983); *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir.1983); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982) (quoting *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir.1973)).

We do not have before us a situation in which there has been a prior determination of disability. Such a prior determination, however, is not the sine qua non of the presumption of continuing disability. In *Hall v. Celebrezze*, 314 F.2d 686, 688 (6th Cir.1963), we held that "[o]nce a condition has been shown to exist, there is a pre-

sumption, in the absence of proof to the contrary, that it has continued." In *Hall,* a case in which we reviewed a denial of disability benefits rather than a termination, there was no prior finding of disability. The Fifth Circuit followed *Hall* in *Rivas v. Weinberger,* 475 F.2d 255 (5th Cir.1973), when it held that "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Id.* at 258 (citations omitted).

■ Turning to the case before us, it is not open to dispute that the medical evidence available in 1953 supported a finding that Richardson's mental condition was disabling. This evidence triggered the presumption of continuing disability and placed the burden on the Secretary to produce evidence that Richardson's condition has improved. *Rivas,* 475 F.2d at 258; *Hall,* 314 F.2d at 688. The record does not disclose evidence of an improvement in his condition. Although Richardson is no longer a skid row alcoholic, the evidence of his mental condition remains essentially unchanged. If anything, Dr. Harvey's testimony indicates that his condition has become progressively worse. Thus, the Secretary has not overcome the presumption of continuing disability. Accordingly, the judgment of the district court is REVERSED and this case is REMANDED to the district court with directions to remand to the Secretary for the award of benefits.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

The majority reverses the decision of the Secretary that the claimant failed to establish that he was disabled on September 30, 1958, the date on which he last met the special earnings requirement. In order to do so the majority relies, as it must if it is to reverse the Secretary, on the application of the familiar evidentiary rule that "once evidence is presented that a condition exists there is a presumption, in the absence of proof to the contrary, that it continues." Because I do not believe that such presumption applies to illness or mental illness, I dissent.

I recognize that our Court has applied a presumption of continuing disability in termination cases. *Haynes v. Secretary of Health and Human Services,* 734 F.2d 284 (6th Cir.1984). However, the basis for applying a presumption that disability continues for an indefinite time in the future once there has been an adjudication that a person has been disabled for a year is significantly different from the basis for applying a presumption of continuing mental illness to establish disability initially. As the Ninth Circuit pointed out in *Dotson v. Schweiker,* 719 F.2d 80 (4th Cir.1983), there is more involved in the former type of presumption than the evidentiary rule that conditions once proved to exist are presumed to continue to exist. Unless the court applies such a presumption the "Secretary [would be permitted] to submit the same medical evidence to different physicians time and time again until the Secretary obtains a favorable result." 719 F.2d at 82. The Ninth Circuit also relied on the Administrative Procedure Act's requirement that the proponent of a rule or order has the burden of proof and that a determination by the Secretary that a claimant is no longer disabled and that benefits must be terminated meets the definition of an "order." Neither of these two considerations apply in the instant case. *See also Patti v. Schweiker,* 669 F.2d 582 (9th Cir. 1982). We are left then with reliance on the evidentiary rule.

The reason for and classification of evidentiary presumptions is succinctly set out by *McCormick on Evidence* § 309 (1954):

Reasons for the Creation of Presumptions: Classification of Particular Presumptions.

The reasons for the recognition of presumptions by the courts are various. First and foremost is the reason of probability. In certain recurring fact-situations it becomes accepted by the judges that the proof of fact A renders the inference of the existence of fact B so probable that it is sensible and time-saving to assume the truth of fact B until the adversary disproves it. A second ground is procedural convenience. * * *

A third consideration is that of fairness in allocating the burden of first producing evidence upon the party who has superior means of access to the proof. * * * Fourth, notions, usually implicit rather than expressed, of social and economic policy incline the courts to favor one contention by giving it the benefit of a presumption, and correspondingly handicapping the disfavored adversary. McCormick notes that the presumption of continuity is based on probability, and that it is usually permissive as opposed to mandatory. Wigmore makes the same observation:

> Continuity: (1) **In general (ownership, possession, residence, insanity, etc.).** It is often said that when a person, or object, or relation, or state of things, is shown to have existed at a given time, its *continuance* is presumed. In reality, however, a genuine rule of presumption is seldom found; the rulings usually declare merely that certain facts are admissible, or that they are sufficient evidence for the jury's finding (§ 2494 *supra*) on such issues as *ownership, possession, authority, insanity, residence,* and sundry other things.

9 *Wigmore on Evidence* § 2530, at 599–601 (1981) (footnotes omitted) (emphasis in original). The majority here is applying a mandatory presumption as opposed to a permissive inference.

I cannot agree that it is so probable that illness or mental illness once experienced continues thenceforth. Common experience is that conditions of illness are changeable, with the exception of physical injuries such as the shortening of a limb, or its loss. Most sick people get better. Many, many mentally ill persons recover and return to productive lives. The fact that someone was mentally ill and in need of psychiatric care five years ago does not mean that they are probably mentally ill today. There are too many persons who have recovered from serious mental breakdowns and become gainfully employed to presume that disability from mental illness

ordinarily continues. Indeed, the invalidity of the presumption here is demonstrated by Dr. Harvey's testimony that it is speculative to state what Mr. Richardson's condition was in 1958.

The Sixth Circuit appears to have been responsible for first introducing the presumption of continuity to establish continuing disability in social security cases. In *Hall v. Celebrezze,* 314 F.2d 686, 688 (6th Cir.1963), the Court referred to this familiar rule of evidence in the following context:

> Dr. Hoffman, a urologist, who examined Mr. Hall at the request of the Secretary on November 15, 1961, stated: "The appearance of the left kidney is consistent with chronic pyelonephritis and previous renal surgery. Impression: Moderately severe hydronephrosis left kidney with evidence of previous renal surgery and chronic pyelonephritis. The right kidney has moderately good function with slight dilation of the renal pelvis consistent with previous renal surgery." The fact that Dr. Hoffman in 1961 found the same condition to exist with respect to the left kidney as did Dr. Blair in 1957 certainly does not disprove Dr. Blair's diagnosis, but rather would seem to confirm it. Once a condition has been shown to exist, there is a presumption, in the absence of proof to the contrary, that it has continued. Dr. Scott reported under date of October 4, 1961 that subsequent X-rays showed no change from his previous reports and that "Occasional urine specimens show small amounts of pus and some bacteria."

No authority is cited for application of the presumption to cases involving a person's physical condition. Nor was there any need to call upon a presumption. I would argue that the statement is dicta.* In *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973), the Fifth Circuit merely cited *Hall* as its authority for applying this presumption to an illness. Once again there was no discussion as to why this evidentiary rule was applicable to a physical condi-

---

* The *Hall* court may have used presumption to mean a permissive inference. *See* discussion of the word "presumption" in *Sandstrom v. Mon-*

tion. The Fifth Circuit found that the plaintiff had rheumatoid arthritis which was steadily worsening and was disabling as of September 8, 1970. It found no evidence that the plaintiff was any better after that date, and he had testified that his disability continued to the date of hearing. As in *Hall*, there was thus no need to resort to a presumption in *Rivas*.

Finally, the Ninth Circuit in *Patti* merely cited the Fifth Circuit's decision in *Rivas*, again without any discussion of why this presumption applies in such cases. We followed *Patti* in *Haynes* again without discussion of why the presumption of continuity should be applied in these cases. Decisions such as *Haynes* and *Patti*, (which concern the presumption that disability continues once there has been an adjudication of disability for the required period) are more properly grounded on the policy concerns explained in *Dotson* than on an evidentiary rule that has been applied to conditions of illness only by relying on an unconsidered scrap of dicta in *Hall*.

I do not believe we should extend an erroneous application of the presumption of continuity to control initial determinations of disability. Accordingly, I dissent.

*tana*, 442 U.S. 510, 515, 522, 99 S.Ct. 2450, 2454, 2458, 61 L.Ed.2d 39 (1979).