**Minnie LINGO, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. C82–3595.**

United States District Court,
N.D. Ohio, E.D.

Sept. 30, 1986.

Kenneth S. Kabb, Cleveland, Ohio, for plaintiff.

Carolyn Watts Allen, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Minnie Lingo seeks relief from the denial by the Secretary of Health and Human Services ("Secretary") of her application for disability benefits under 42 U.S.C. § 416(i), 42 U.S.C. § 423. The magistrate's report and recommendation urges that judgment be entered in favor of the plaintiff. The Secretary has filed objections, and this Court has conducted a *de novo* review of the objected-to portions of the report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).[1]  *See Brown v. Wesley's Quaker Maid,* 771 F.2d 952, 954 (6th Cir.1985). For the reasons set forth below, the objections are overruled, the report and recommendation is adopted, Lingo's motion for judgment on the pleadings and transcript of evidence is granted, and the Secretary is hereby directed to grant Lingo benefits consistent with this opinion.

I.

Under § 223 of the Social Security Act, an individual is entitled to disability insurance benefit payments if he has met the requirements for insured status, has not attained retirement age, has filed an application for the benefits, and suffers from a statutorily-defined disability. 42 U.S.C. § 423(a)(1) (1983). Benefits will not be paid to a claimant who engages in substantial gainful activity, during his period of disability, in excess of that permitted by statute. 42 U.S.C. § 423(e).

"Disability" which is compensable under section 423(a)(1) is defined by subsection (d), which provides in relevant part:

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

\*  \*  \*  \*  \*  \*

(2) For purposes of paragraph (1)(A)—

(A) An individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for

---

1. 28 U.S.C. § 636(b)(1)(C) provides:

... [T]he magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report of specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region which such individual lives or in several regions of the country.

\* \* \* \* \* \*

(C) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

\* \* \* \* \* \*

(5) (A) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require....

The burden of proving that disability exists lies with the claimant. *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir.1984). Findings of fact and initial determinations of eligibility are made by the Secretary and may be reconsidered in the course of administrative hearings and investigations. 42 U.S.C. § 405(b)(1). Following a final determination of the Secretary, a claimant is entitled to judicial review in the district courts. 42 U.S.C. § 405(g). However, findings of fact made by the Secretary will be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).

## II.

Minnie Lingo applied for disability insurance benefits on November 12, 1981, alleging that she is prevented from working by shoulder, neck and back pain and by leg numbness. The application was denied, and Lingo was also unsuccessful in her reconsideration proceeding. She demanded a hearing before an Administrative Law Judge ("ALJ") to obtain *de novo* consideration of her application. Lingo and her attorney appeared before the ALJ, who determined on August 27, 1982 that Lingo did not suffer a disability as defined by 42 U.S.C. § 423(d). When the Appeals Council declined further review of the ALJ's decision, Lingo appealed to this Court. A remand was ordered on March 3, 1983, on a motion of the Secretary because a transcript could not be prepared of the administrative hearing due to defects in the audiotape. A second hearing therefore took place before the same ALJ on July 18, 1983, who again determined on October 28, 1983, that Lingo was not disabled. On January 23, 1986, the Appeals Council affirmed the ALJ's decision, and this decision became the final determination of the Secretary.

Pursuant to 42 U.S.C. § 405(g), Lingo appealed the administrative determination to this Court. The magistrate has reviewed Lingo's motion for judgment on the pleadings and transcript of evidence, after waiting six weeks beyond the extended deadline for the Secretary to file a submission on the merits. The magistrate recommends that Lingo's motion be granted. The Secretary has filed objections to the magistrate's report and recommendation. In this *de novo* review of the magistrate's conclusions, the Court considers whether the ALJ's decision was supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

## III.

At the second hearing before the ALJ, the evidence included the reports of six physicians, as well as Lingo's testimony.

Lingo testified that she was fifty-eight years old and has a sixth grade education. She was employed for fifteen years prior to September of 1981 as an unskilled machine operator at the Parker Hannifin Corporation. She has not been employed since September 3, 1981, in part as the result of an accident. She claims that she is unable to work because of pain in her back, neck, and shoulder and numbness in her leg. She is able to perform household duties at a slow pace and to drive her car short distances. She cannot sit for long periods of time and cannot walk more than a block and a half. The ALJ believed that Lingo's testimony was not fully credible.

Lingo introduced documentation of her hospitalization at Lake County Memorial Hospital. She was a patient there for three weeks in early 1981 for a saphemous vein stripping of the left leg and complications from the surgery. She introduced a report from her physician, Phillip Goldberg, M.D., who had treated her for eleven years for osteoarthritis, lumbosacral and cervical spine strain, chronic low back pain syndrome and varicose veins. He stated that she was unable to sit, stand, or walk for any significant length of time. Dr. Goldberg concluded that he felt she was permanently disabled, primarily as a result of the back pain and an "inadequate personality".

Charles J. Nowacek, M.D., orthopaedic surgeon, reported that he had treated Lingo in his office in late 1980 for a job-related jamming-type injury to the spine. Treatment was abruptly discontinued by the patient, but he reported no evidence of disc or neural damage.

Arthur C.J. Brickel, M.D., a neurologist, reported that he examined Lingo on December 20, 1982. His findings suggested either peripheral nerve or posterior tibial dysfunction, occipital neurtalgia and frozen shoulder syndrome. Steven P. Combs, M.D. examined Lingo on July 25, 1983 and reported that she exhibited dysfunction of the L5 nerve root and degenerative arthritis of the acromial clavicular joints.

Two additional medical reports were introduced at the hearing. Joseph A. Solomayer, M.D. examined Lingo for Worker's Compensation claims and found her range of motion within normal limits. He concluded that she was not permanently and totally disabled. Finally, a report by Robert Rochelle, M.D., documented mild orthopaedic difficulties.

The conclusion of the ALJ after evaluating these reports was that Lingo was not under a disability as defined in the Social Security Act.

Four months subsequent to the hearing before the ALJ, Lingo was evaluated by a clinical psychologist, Steven Kushnick, Ph.D. His report was submitted to the Appeals Council on its reconsideration of the ALJ's decision.

Dr. Kushnick tested Lingo on November 16, 1983. He administered four cognitive and personality tests and conducted a clinical interview with Lingo. He found that although Lingo is able to maintain the daily activities necessary to care for herself, her pain and numbness are consistent with a diagnosis of hysterical conversion disorder, which is classified as a neurosis. Underlying this disorder is a latent undifferentiated schizophrenia, classified as a psychosis. The pattern of responses on the Minnesota Multiphasic Personality Inventory ("MMPI") indicates that the conversion disorder, which is normally manifested in physical symptoms such as those of which Lingo complains, masks, or defends against, the more serious schizophrenia. Voluntary control is totally absent from the physical symptoms. The psychic energy needed to maintain the conversion reaction typically takes its toll in preventing the individual from meeting more than the routine activities of life with anything approaching vigor or depth. In addition, with a WAIS full-scale IQ of eighty, Lingo is borderline mentally retarded.

Dr. Kushnick concluded that "she exceeds sufficient listings to be considered totally disabled within the Social Security definition." Tr. at 231.

The Appeals Council noted, upon evaluation of this new evidence, that "the claimant does not have a medically determinable mental impairment as provided in Section

404.1508 of Regulations No. 4 (10 CRF 404.1504). The record reveals no prior evidence of diagnosis or treatment of a mental disorder. Dr. Kushnick's mental status examination of the claimant was essentially unremarkable." Tr. at 7.

### IV.

Applying governing law to this factual record, the question is whether there is any substantial evidence supporting the ALJ's and the Appeals Council's conclusions that Lingo does not suffer from a "disability" as defined by the Social Security Act. The Secretary cites two specific errors in the report and recommendation of the magistrate.

■ First, he argues that *"numerous doctors of record who have examined plaintiff or reviewed the medical record have expressly concluded that plaintiff has no severe impairment whatever and is fully capable of working"*. Defendant's Objections at 7. After a careful review of the reports of the six physicians who examined Lingo or read her records, this Court agrees with the magistrate and the Secretary that the evidence of physical impairment, although somewhat inconsistent, does in substantial part support the Secretary's conclusion that it is not severe or disabling.

■ Second, the Secretary maintains that opinions of Drs. Goldberg and Kushnick are not supported by the evidence, and conflict with other evidence. Dr. Goldberg's report provides the inconsistency stated above in the first objection of the Secretary. Dr. Kushnick's report, however, is not inconsistent with those of the physicians. It is simply an evaluation of a totally different aspect of Lingo's functioning, her mental distress, and is therefore uncontradicted. The Secretary cites Dr. Kushnick's report as "simply *one* piece of evidence". Defendant's Objections at 2. In fact, on the issue of psychological disability it is the *only* evidence.

Looking only at the psychologist's uncontroverted report on Lingo's mental limitations and the evidence supporting it, this Court does not agree that a reasonable mind, viewing the record as a whole, would find adequate support for the conclusion that psychological impairment does not significantly limit her ability to be employed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). As the magistrate aptly pointed out,

The Social Security Act recognizes that pain may itself be disabling. It further recognizes that such pain may be of other than purely anatomical origin, providing in pertinent part, that allegations of disabling pain must be supported by "medically accepted clinical or laboratory diagnostic techniques" demonstrating the existence of an "impairment that results from anatomical, physiological, *or psychological* abnormalities which could reasonably be expected to produce the pain or other symptoms alleged", 42 U.S.C. § 423(d)(5) (emphasis added).

Magistrate's report at 6.

■ Dr. Kushnick diagnoses Lingo as suffering from a hysterical conversion reaction (causing pain and numbness) with an undifferentiated schizophrenic component. These disabilities fall well within the guidelines of the Social Security Act's revised Listing of Impairments effective January 6, 1986. According to the American Psychiatric Association *Diagnostic and Statistical Manual III* ("DSM–III") at 244–245:

300.11 Conversion Disorder (or Hysterical Neurosis, Conversion Type)

The essential feature is a clinical picture in which the predominant disturbance is a loss of or alteration in physical functioning that suggests physical disorder but which instead is apparently an expression of a psychological conflict or need. The disturbance is not under voluntary control, and after appropriate investigation cannot be explained by any physical disorder or known pathophysiological mechanism.

\* \* \* \* \* \*

Diagnostic criteria for Conversion Disorder

A. The predominant disturbance is a loss of or alteration in physical functioning suggesting a physical disorder.

B. Psychological factors are judged to be etiologically involved in the symptom as evidenced by one of the following:

(1) there is a temporal relationship between an environmental stimulus that is apparently related to a psychological conflict or need and the initiation or exacerbation of the symptom

(2) the symptom enables the individual to avoid some activity that is noxius to him or her

(3) the symptom enables the individual to get support from the environment that otherwise might not be forthcoming

C. It has been determined that the symptom is *not under voluntary control.*

D. The symptom *cannot* after *appropriate investigation, be explained by a known physical disorder* or pathophysiological mechanism.

E. The symptom is not limited to pain....

(Emphasis added). Concerning the underlying conflict, Dr. Kushnick comments that "the conversion reaction appears to represent a displacement of feelings of personal inadequacy into somatic pain responses.... [and that] ... the conversion symptoms may also represent a displacement of, or defense against more florid outcroppings of schizophrenia. This would imply that should the conversion reaction fail to defend Lingo against the stresses and pressures that she perceives from the outside world, she would decompensate into more frankly schizophrenic behavior." Tr. at 230. He concludes:

The overall pattern is thus considered to represent a combined emotional disorder involving the neurotic conversion symptoms and a more broad based schizophrenia. As long as the conversion symptoms are successful in warding off the feelings of inadequacy and defend Lingo against schizophrenic intrusion, she will be able to maintain her current facade of personal adequacy. However, strip her of the conversion symptoms, and in all likelihood she will decompensate into a more frankly schizophrenic

state. Thus, in this evaluator's opinion, to consider Lingo as totally disabled will enable Lingo to maintain what to the untutored eye appears to be self-sufficiency and capability to work. Force her to give up the conversion, and place her in a "menial position" and Lingo will decompensate. It should be noted that Lingo's intellectual capability and current physical capabilities would only equip her to handle such menial jobs, where prior to her accident, she had greater status, earnings and feeling of adequacy.

In the final analysis then, it is this evaluator's opinion that Lingo displays sufficient indication of an hysterical conversion reaction to meet or exceed the listings under functional, non-psychotic disorders. The schizophrenic component that has been described in this evaluation would also meet the listing for functional psychotic disorder. When these two listings are viewed along with the true somatic complaints, limited intellectual capability and Lingo's age, it is this evaluator's opinion that singly and in combination she exceeds sufficient listings to be considered totally disabled within the Social Security definition.

(Tr. at 230–231). This conclusion is supported by portions of Lingo's testimony in which she indicates that she is in disabling pain and has numbness in her legs.

Dr. Kushnick's evidence to support his reasoning and conclusions comes not only from the clinical interview and case history given to him as an experienced clinical psychologist. These are supplemented and verified by psychological test results, specifically the MMPI. Dr. Kushnick notes that significant elevations of the hypochondriasis and hysteria scales in combination with the relatively low depression scale show a typical conversion reaction pattern. The elevation of the schizophrenic scale indicates that the underlying conflict is indeed a serious one, psychotic in nature. The fact that Lingo also has employment-related feelings of personal inadequacy does not lessen the severity of the schizophrenic component.

Evidently the Secretary seeks to second guess the clinical psychologist by offering statements of physicians that Lingo is malingering. It should be noted that physicians, with the exception of those specializing in psychiatry (none of whom examined Lingo) are totally unqualified to diagnose psychological disorders. Were the orthopaedic surgeons who reported to the ALJ to diagnose malingering and rule out conversion disorder, they would be practicing psychology without a license. It is beyond belief that the Secretary would encourage them to do so. Yet incredibly the Secretary cites with approval Dr. Solomayer's statements concerning Lingo's motivation even though he clearly has no expertise to evaluate the psychological causes of behavior. Dr. Kushnick noted that "she produced a valid [MMPI] profile, with the validity configuration suggesting that she is somewhat open and blunt in speech and manner and is experiencing some inadequacy of her defense mechanisms and lowered ego strength." Tr. at 229. It is common knowledge that the MMPI has an elaborate built-in mechanism to detect malingering. The fact that the validity profile suggested openness indicates that Lingo was not "faking" her responses. Had she attempted to do so, the validity scales would have pointed out the test's invalidity for this administration.

The Secretary simply cannot be allowed to substitute his own impression of Lingo's health for uncontradicted medical (psychological) evidence. *Suarez v. Secretary of Health and Human Services*, 740 F.2d 1 (1st Cir.1984); *Moro Arroyo v. Secretary of Health and Human Services*, 622 F.Supp. 1579 (DC PR 1985). Given Lingo's unchallenged diagnosis of hysterical conversion syndrome with undifferentiated schizophrenia and its effects on her ability to carry out more than the essential tasks of everyday living, the Secretary's findings of no severe disability are unsupported by substantial evidence. Lingo's allegations, however, are well supported by the required clinical and diagnostic evidence. *McCann v. Califano*, 621 F.2d 829 (6th Cir.1980). Therefore the report and recommendation of the magistrate is adopted, and the plaintiff's motion for judgment on the pleadings and transcript of the evidence is granted. The Secretary is reversed.

## V.

The Court concludes that the ALJ's decision that Lingo was not disabled is not supported by substantial evidence. Accordingly, Lingo's motion for judgment on the pleadings and transcript of evidence is granted. The Secretary's decision is reversed and the Secretary is hereby directed to grant Lingo benefits consistent with this opinion.

IT IS SO ORDERED.