833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William LAWRENCE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1007.
 United States Court of Appeals, Sixth Circuit.
 Nov. 17, 1987.
 
 Before NATHANIEL R. JONES, RALPH B. GUY, JR., and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant William Lawrence appeals the district court's judgment affirming the Secretary's decision that Lawrence is capable of performing a full range of sedentary work. We affirm.
 
 
 2
 Lawrence filed an application for disability insurance benefits on November 24, 1981, alleging that he had been disabled since August 19, 1979, due to a heart condition. His application was denied initially and on reconsideration. Thereafter, a de novo hearing was held before an administrative law judge ("ALJ") at which Lawrence was represented by counsel. In a decision dated June 27, 1983, the ALJ found that Lawrence retained the capacity to perform his past work up through the time his insured status expired. Thus, the ALJ denied his application for benefits. Lawrence sought review of the ALJ's decision and on September 27, 1983, the Appeals Council denied review and adopted the ALJ's determination as the final decision of the Secretary.
 
 
 3
 Lawrence then filed an action for judicial review of the Secretary's decision in United States District Court for the Eastern District of Michigan. That court found Lawrence could not do his past work and remanded the case to the Secretary for consideration of Lawrence's ability to do other work.
 
 
 4
 On September 11, 1985, a supplemental hearing was held before the ALJ and on September 19, 1985, the ALJ issued a decision denying benefits. In so doing, the ALJ held that the Department's medical vocational guidelines directed a finding of not disabled. This determination was based upon Lawrence's age, education, work experience and capacity for performing a full range of sedentary work. The ALJ found that, based on both the medical evidence and Lawrence's testimony, Lawrence retained the ability to perform all requirements of work except prolonged standing and walking, frequent reaching above shoulder level and lifting or carrying more than ten pounds. On March 10, 1986, the Appeals Council rejected Lawrence's objections and adopted the ALJ's decision as the Secretary's final decision.
 
 
 5
 Following the ALJ's decision, the parties stipulated to a reinstatement of the case and filed cross-motions for summary judgment. On October 15, 1986, the magistrate entered his report, recommending affirmance of the Secretary's decision. On November 26, 1986, the district court entered a judgment adopting the magistrate's report and recommendation and affirming the Secretary's decision.
 
 
 6
 The salient facts are as follows. Lawrence was born on December 1, 1936. He is a high school graduate who has taken college-level courses in business and labor relations. He worked for TRW as a steel forger from 1965 through 1974, was unemployed from 1974 through 1977, and worked as an axle polisher, axle grinder and pinion grinder for Ford Motor Company from March 1977 through August 1979. In August 1979, because of lay offs, he was transferred to another Ford plant which supposedly had no jobs available for one with his medical restrictions. He was laid off on medical grounds and has not since been employed.
 
 
 7
 In March 1978, Lawrence was hospitalized complaining of oppressive chest discomfort and shortness of breath. Based on electrocardiograms, chest x-rays and other tests, he was diagnosed as suffering from acute congestive heart failure due to coronary artery artherosclerosis and status post anteroseptal myocardial infarction.
 
 
 8
 About a month later, after suffering from recurring chest pain, Lawrence underwent cardiac catheterization which revealed total occlusion of the left main coronary artery. In July 1978, double bypass surgery was performed and a ventricular aneurysm was removed. Following surgery, he appeared to do very well, and in August 1978, post-operative cardiac catheterization showed the bypass surgery to have indeed been successful. At that time, cardiomegaly and left ventricular abnormalities were noted. Despite those limitations, Lawrence returned to work in September 1978 on a full-time basis. He was, however, given greater flexibility as to breaks and leave time.
 
 
 9
 In April 1979, Lawrence was again hospitalized complaining of upper-middle abdomen pain and unusually profuse sweating. Electrocardiograms showed a first-degree atrial ventricular block, sinus bradycardia during sleep and the previous anterolateral infarction. Chest x-rays revealed cardiomegaly, and twenty-four hour Holter monitoring revealed frequent ventricular arrhythmia. These problems were believed to be due to Digitalis, the medication Lawrence was taking, so as an alternative, he was prescribed Dilantin. At the time of his discharge, Dr. Noel Rise, one of his treating physicians, noted that his prior heart disease was improved. After his change in medication, Lawrence underwent a treadmill stress test in which he achieved the maximum predicted heart rate and showed only rare premature ventricular contractions. His cardiologist, Dr. William Smiley, concluded that he displayed no exercise-induced chest discomfort or arrhythmia, that his cardiorespiratory fitness was fair and that his atrio-ventricular conduction was normal.
 
 
 10
 Dr. Smiley next examined Lawrence in September 1980. At that time, Lawrence complained of mild abdominal discomfort and easy fatigability, but he did not suffer from anginal chest pain, fainting or an abnormally fast heart rate. Dr. Smiley stated that Lawrence's prognosis "seems quite reasonable," but noted that because of his extensive scar tissue and present ventricular arrhythmia, he might later develop life-threatening arrhythmia.
 
 
 11
 In May 1981, Lawrence was hospitalized complaining of an irregular heart beat after having consumed a six-pack of beer. During twenty-four hour monitoring, his heart displayed predominant sinus rhythm with rates varying within normal limits, occasional premature atrial and ventricular contractions and regular non-specific ST-T wave changes.
 
 
 12
 In June 1981, Lawrence was examined by Dr. Arnold Eisemann, who noted normal blood pressure and pulses and observed no signs of a heart enlargement or murmur. A lipoprotein and triglyceride study that month was normal. In July 1981, Lawrence was seen by Dr. J.C. Day who reported, on the basis of a physical examination, that his heart sounds were of good quality and that his heart displayed normal sinus rhythm. An EKG showed a somewhat reduced heart rate and suggested an intraventricular conduction defect and anterolateral ischemia, however, an x-ray showed no abnormalities other than a moderate, generalized cardiac enlargement.
 
 
 13
 Lawrence was examined again in October 1982 by Dr. Smiley. Lawrence stated that he had difficulty in sitting for periods longer than forty-five minutes and became short of breath during long phone conversations. However, he did not suffer from angina, palpitations, fainting or nocturnal shortness of breath. Dr. Smiley concluded that Lawrence's prognosis was "somewhat guarded" due to his ventricular dysfunction and associated coronary artery disease and opined that his condition "does limit [his] ability to do physical tasks."
 
 
 14
 Dr. Ben Lewis served as a medical advisor at the second administrative hearing. He stated that Lawrence suffered from ischemic heart disease and that the record demonstrated Lawrence had a moderate cardiac enlargement. Lewis found no medical evidence in the record indicating continuing left ventricular hypertrophy or that Lawrence was subject to exercise-induced arrhythmia. Lewis stated that, based on Lawrence's stress tests, he would normally be viewed as able to do light work involving some standing and occasional overhead reaching. However, Dr. Lewis noted that because Lawrence had had a cardiac aneurysm removed and seemingly had some continuing cardiac enlargement, he did show reduced cardiac output which could result in easier fatigability.
 
 
 15
 Samuel Goldstein, a vocational expert, also testified at the second hearing. He classified Lawrence's prior work as light semi-skilled (pinion-grinder and grinder repairman) and medium semi-skilled (upset machine operator). He also indicated that Lawrence had acquired transferable skills from his prior work, including grinding techniques, machine-operating techniques, die setting and measurement taking. He indicated if Lawrence were limited to sedentary work, he would not be able to perform his prior work. He also stated that Lawrence's physical problems, however, imposed only exertional limits on his ability to work and were therefore not a total restraint on his ability to perform some type of work. However, he did indicate that there were not many jobs that allowed beginning employees to take excessive amounts of leave or frequent, unscheduled breaks.
 
 
 16
 Lawrence himself, in August 1979, stated that although he has several "bad" days a week where he feels extremely ill, he could do odd jobs, drive, work on his car, play cards, go for short walks and visit friends without experiencing many problems. In January 1981, he stated that no change had occurred, since he had filed his claim, that affected his daily activities. He also testified that he attended classes at a community college between 1979 and 1982 taking anywhere from an eight-hour class schedule to a full twelve-hour course load. In addition, he stated that he could walk five to six blocks at a leisurely pace and about half a block at a brisk pace. He stated he occasionally went to the park, read regularly about an hour a day and usually spent four hours a day typing or writing.
 
 
 17
 Lawrence met the special earnings requirements for disability insurance purposes through September 30, 1982, but not thereafter. He alleges his condition has gotten steadily worse since December 1978 and claims that prior to September 1982, he suffered from "fullness" in the chest, shortness of breath and fatigue upon exertion and occasional lightheadedness upon changing position quickly.
 
 
 18
 The burden of proving entitlement to disability insurance benefits rests upon the claimant. Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984). Where, as here, it is established that a claimant cannot perform his past work, the burden of going forward with the evidence shifts to the Secretary, who must show the existence of available employment compatible with the claimant's capacity for work. Nonetheless, the claimant retains the ultimate burden of persuasion on the issue of his inability to engage in substantial gainful activity. Id.
 
 
 19
 Judicial review of the Secretary's decision is limited to determining whether the findings made by the Secretary are supported by substantial evidence when the record is viewed as a whole. Moore v. Califano, 633 F.2d 727, 729 (6th Cir.1980); 42 U.S.C. Sec. 405(g) (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." It is more than a scintilla, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). Even though a reviewing court would have evaluated the evidence differently had it been the trier of fact, the Secretary's findings are conclusive whenever they are supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 20
 The statute charges the Secretary, not the courts, with the duty to weigh the evidence, to resolve material conflicts, to make independent findings of fact and to determine the case accordingly. 42 U.S.C. Sec. 405(g); Richardson v. Perales, supra. In evaluating the evidence, special deference is due the ALJ's credibility determinations. Such findings are invaluable and "should not be discarded lightly." Houston v. Secretary of Health and Human Service, 736 F.2d 365, 367 (6th Cir.1984) (citation omitted).
 
 
 21
 Lawrence asserts that he is completely disabled and cannot perform even sedentary work. He bases his assertion upon Dr. Lewis's testimony, Dr. Smiley's report and the alleged absence of conflicting medical testimony indicating that he could be employed. He asserts that objective evidence, as required by the regulations, supports his assertions.
 
 
 22
 The Secretary disagrees and asserts that Lawrence's medically-established heart condition does not meet or equal any impairment set forth in the Department's Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P., App. 1 (1987) ("Listings"). The Secretary states the evidence shows that Lawrence displayed no signs in 1982 of current hypertensive vascular disease or cardiac aneurysm nor did he suffer from severe chest pain of cardiac origin even though he was diagnosed as suffering from ischemic heart disease (Listings Secs. 4.03, 4.04 and 4.11). Furthermore, the results of his last stress test, the Secretary asserts, did not even demonstrate disabling ischemia (Listings Secs. 4.00E, 4.00G and 4.04). Although Lawrence was diagnosed as suffering from congestive heart failure prior to his heart surgery, the Secretary states that the medical evidence shows that following such surgery he showed no signs of recurrent heart failure, persistent left ventricular enlargement and hypertrophy, persistent mitral-type heart involvement or cor pulmonale (Listing Sec. 4.02). The Secretary also states that Lawrence did not display arrhythmias in uncontrolled repeated episodes of cardia syncope. (Listings Sec. 4.05). The Secretary is correct in his assertions.
 
 
 23
 The Secretary found Lawrence retained the ability to perform sedentary work. In so doing, he gave little credibility to Lawrence's subjective complaints with regard to his work capabilities. This was a proper finding in light of Lawrence's acknowledgement of the realm of activities in which he engaged. He was able to attend college and engage in extensive reading and writing at home. He also visited the park, drove his car, walked extensively, visited friends and did odd jobs. His lightheadedness and shortness of breath apparently arose from relatively strenuous activities like moving a refrigerator or changing car tires and not from his daily, less strenuous activities.
 
 
 24
 The Secretary's credibility finding is supported by substantial evidence in light of both the above evidence and the fact that Lawrence's recent testimony as to his symptoms during 1979-1982 contradicts the reports he gave to his doctors during that period. He testified that he suffered from shortness of breath when trying to sleep at night, but both his own doctor and a one-time examiner reported that Lawrence did not have this problem in 1981-82. Because the Secretary's credibility finding is supported by substantial evidence, it is conclusive. Mullen v. Bowen, 800 F.2d 535, 545-46 (6th Cir.1986) (en banc).
 
 
 25
 The medical evidence also supports the Secretary's finding that Lawrence can perform sedentary work. The evidence shows Lawrence suffered from coronary artery disease and low cardiac output and that this condition precluded him from performing his prior work which involved prolonged standing and frequent reaching above shoulder level. Despite this limitation, however, the evidence also shows Lawrence retained the ability to perform sedentary work.
 
 
 26
 Medical evidence supporting this finding includes the April 1979 stress test, during which Lawrence met his maximum predicted heart rate and his doctor indicated that his cardiorespiratory fitness was fair. A 1981 twenty-four hour monitoring test also showed Lawrence's heart rhythm to be basically normal, with only occasional premature ventricular contractions and, in March 1982, Dr. Smiley noted that while Lawrence had an occasional palpitation, he had not experienced recurrent angina or heart failure. It is also to be noted that when Dr. Smiley indicated, in October 1982, that Lawrence's heart condition "does limit his ability to perform physical tasks," he did not state that Lawrence was incapable of performing sedentary work. Moreover, while two other doctors agreed that he could not go back to his job at Ford, they did not state that he was unable to do sedentary work.
 
 
 27
 Dr. Lewis, the medical advisor, testified that while Lawrence's reduced cardiac output could affect his ability to do light work on a sustained basis, he noted that Lawrence had been able, at one time, to do his previous work, even including working overtime in early 1979, as long as he had the opportunity to take a break when necessary. While Lawrence claims his condition has gotten steadily worse, the medical evidence does not support any claim of deterioration.
 
 
 28
 Because sedentary work involves lifting no more than ten pounds at a time and only occasional lifting and carrying of files, ledgers and small tools, frequent sitting and occasional walking and standing, 20 C.F.R. Sec. 404.1567(a) (1987), the Secretary did not err in finding that Lawrence can perform sedentary work when he is able to engage in such activities as he testified that he engaged in between 1979 and 1982. See Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir.1986) (claimant could do sedentary work where he was able to drive short distances and walk four to five blocks, despite his complaints of disabling pain).
 
 
 29
 The Secretary also met its burden by demonstrating that Lawrence could perform existing work in the national economy by relying upon the Department's medical vocational guidelines. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981). The vocational expert testified that Lawrence had a number of transferable skills and that he could perform the full range of sedentary work. Therefore, the ALJ held that a finding of "not disabled" was directed by Rules 201.21 and 201.22 of the Department's guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1 (1987).
 
 
 30
 Given appellant's age, his high school education (plus college class work), his transferable skills and his capacity for the full range of sedentary work, the Secretary's finding that Lawrence can perform a full range of sedentary work is supported by substantial evidence.
 
 
 31
 Accordingly, the district court's judgment is AFFIRMED.