902 F.2d 32
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linda BULLOCK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-6141.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1990.
 
 Before BOYCE F. MARTIN, Jr., and NATHANIEL R. JONES, Circuit Judges; and JOHN FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Linda Bullock appeals the district court's judgment affirming the Secretary's denial of her social security benefits.
 
 
 2
 Bullock filed an application for supplemental security income on April 14, 1987, alleging disability since August 31, 1986 due to spinal surgery, chronic thrombosis, nerves, and hypoglycemia. Bullock was twenty-two years old at the time of the administrative law judge's decision. She has a GED and her work experience included being a maid, a nurse's aide, and a cashier. Bullock has not engaged in substantial gainful activity since the date of her application for benefits.
 
 
 3
 The medical evidence for the period prior to her filed claim established that on November 18, 1981, Bullock entered the hospital with a diagnosis of idiopathic scoliosis. Consequently, she underwent spinal fusion surgery to correct the scoliosis. Her physician, Dr. Alfred Kahn, stated that, as of February 1983, due to his operation, Bullock should not engage in heavy work or work involving lifting more than 10-15 pounds.
 
 
 4
 Shortly after her spinal surgery, Bullock developed swelling and pain in her right leg consistent with iliofemoral thrombosis which improved with treatment. On October 22, 1982, Bullock was successfully treated for swelling in her left leg and was instructed to wear support hose for one year. On September 1, 1983, Bullock sought treatment for soreness behind her left knee. Her physician, Dr. Joseph C. Todd, did not believe there was active phlebitis and requested that she continue to wear the stockings. Bullock again complained again of pain and swelling in her left leg on May 31, 1984, but there were no symptoms of phlebitis. Dr. Todd concluded that Bullock suffered from a contusion or tendinitis.
 
 
 5
 On June 12, 1985, Bullock gave birth to a baby. On March 13, 1986, Bullock underwent treatment for musculoskeletal strain from lifting her child.
 
 
 6
 As for the period after her filing of her benefits claim, on March 4, 1987, Bullock was treated for left leg pain. Her physician, Dr. John Rawlings found no significant swelling in her leg. He suspected superficial phlebitis and recommended that she stay off her feet, elevate her leg, wear support hose and, begin taking a drug called Enseal. The evidence indicates that her condition improved.
 
 
 7
 Bullock suffered several other incidents of back and leg pain in 1987 and 1988 and received minor treatment such as one-week of bed rest, suggestions to do sit ups, and leg elevation. The x-rays taken by her various physicians showed minimal scoliosis. Bullock responded to treatment for each episode of pain. One of her treating physicians during this time, Dr. Gopal Rastogi, indicated that Bullock could obtain no gainful employment.
 
 
 8
 Bullock also alleged that she suffered from a disabling nervous condition. The single psychiatric examination in the record, conducted on July 6, 1987, indicated that Bullock did not suffer from delusional thinking and that she seemed well-motivated and above average intelligence. She was diagnosed as having anxiety disorder with possible dysthymic order, improving. The diagnosis does not, however, conclude that Bullock was disabled.
 
 
 9
 In reviewing the evidence, the administrative law judge discounted Dr. Rastogi's opinion that Bullock could not engage in gainful work. The administrative law judge relied on the evidence provided in the reports of Dr. Kahn, her treating physician, that Bullock should avoid work involving the lifting of more than 10-15 pounds. Accordingly, the administrative law judge concluded that although Bullock could not return to her former unskilled work positions, she could engage in sedentary work. In consideration of her age, education, prior work experience, and residual functional capacity to perform sedentary work, under 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.27 (1988) (the Medical-Vocational guidelines or grids), the administrative law judge found Bullock not disabled.
 
 
 10
 The administrative law judge's assessment was affirmed by the district court on July 14, 1989. Our review of a denial of disability benefits is limited to determining whether there is substantial evidence to support the Secretary's decision. 42 U.S.C. Sec. 405(g); Willbanks v. Secretary of Health and Human Services, 847 F.2d 301, 303 (6th Cir.1988).
 
 
 11
 Bullock argues that the administrative law judge incorrectly applied the grids to find her not disabled. The burden of proof is on Bullock to prove the issue of disability. Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984). Bullock demonstrated her inability to return to her former occupation, consequently, the burden shifted to the Secretary to go forward with evidence that she can perform other work. See Cole v. Secretary of Health and Human Services, 820 F.2d 768, 771 (6th Cir.1988).
 
 
 12
 The administrative law judge relied on the report of Dr. Kahn, Bullock's treating physician, to find that Bullock retained the capacity to perform sedentary work. In November 1987, Kahn stated that Bullock would not be able to perform heavy work but would be able to perform work which did not involve heavy repetitive bending, stooping, or lifting more than ten to fifteen pounds. The diagnosis of a treating physician is accorded great weight where, as here, it is based on sufficient medical data. Miller v. Secretary of Health and Human Services, 843 F.2d 221, 224 (6th Cir.1988). Bullock bases her claim of disability on the report of Dr. Rastogi. The opinion of a treating physician is accorded substantially greater weight than that of a physician who has seen a claimant only once. Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir.1987). Moreover, other medical evidence sharply contradicts Dr. Rastogi's testimony, indicating that Bullock walked without difficulty. While Dr. Kahn expressed his doubts that Bullock would be able to secure gainful employment unless she had a high degree of education or skill allowing her to be flexible with her work, that statement was based on his assessment of employment opportunities, not his assessment of her physical limitations. We find that substantial evidence supports the finding that Bullock retained the capacity to perform sedentary work.
 
 
 13
 In arriving at the determination that Bullock could perform sedentary work, the administrative law judge relied on the Medicaal-Vocational Guidelines, the grids. The Secretary may use the grids to meet its burden of proof that substantial evidence supports a finding that the claimant has the vocational qualifications to perform specific jobs unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by her exertional limitations. Cole, 820 F.2d at 771. A nonexertional impairment is any impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. SSR 83-10. Nonexertional impairments include impairments affecting mental, visual, auditory, and speech functions. Id. They also include impairments affecting climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, and use of the fingers for fine activities. Id. In other words, nonexertional limitations concern mental, sensory, or environmental limitations. See cole, 820 F.2d at 772. "A mere allegation of a nonexertional limitation is not sufficient to preclude application of the grid; the determining factor is whether the alleged nonexertional impairment is severe enough to alter the conclusion that the claimant could do a full range of work." Id. at 772. Reliance on the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by her exertional limitations. Shelman v. Heckler, 821 F.2d 316 (6th Cir.1987). Here, the clear medical evidence rejected Bullock's claim that her alleged mental disorder and other nonexertional limitations affected her ability to perform a full range of sedentary work.
 
 
 14
 Bullock cites Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir.1985) (Per Curiam), as supporting her position that the administrative law judge erred by ruling that she could engage in sedentary work under the grids. In Wages, the claimant suffered from kyphoscoliosis of the spine. That disability was supported by several diagnoses that the claimant could not engage in "heavy lifting, stooping, and prolonged sitting or standing." Wages, 755 F.2d at 496 (emphasis supplied); see id. at 498. This Circuit held that the need to alternate between sitting and standing precluded the performance of a full range of sedentary work. Id. at 498-499.
 
 
 15
 Bullock provided no medical evidence that she would need to alternate between sitting and standing or that she would be prohibited from sitting for prolonged periods of time. The medical evidence shows that her scoliosis is minimal, unlike the claimant in Wages whose kyphosis was apparent even to the administrative law judge. Wages, 755 F.2d at 498. While Bullock testified that she had to alternate between sitting and standing, a mere allegation of a limitation by a claimant is insufficient to preclude the Secretary's application of the grids. See Cole, 820 F.2d at 772. Likewise, the medical evidence indicated that she would be unable only to perform repetitive stooping, not a normal amount of stooping associated with sedentary work.
 
 
 16
 We also reject Bullock's claim that the administrative law judge's decision that sedentary employment was available to Bullock was based on intuition or conjecture and that the case should have been remanded for the testimony of a vocational expert. The United States Supreme Court held, in Heckler v. Campbell, 461 U.S. 458, 470 (1983), that the Secretary could reasonably rely on the medical-vocational guidelines in appropriate case rather than on the testimony of a vocational expert. Because we find that the guidelines applied in this case, the administrative law judge did not err by failing to seek the testimony of a vocational expert.
 
 
 17
 Finding that the decision denying Bullock her claimed benefits is supported by substantial evidence, we affirm the decision of the district court.
 
 
 
 *
 The Honorable John Feikens, Senior District Judge for the Eastern District of Michigan, sitting by designation