895 F.2d 1413
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rosalie LAVIGNE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 89-1643.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1990.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Rosalie LaVigne appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (Secretary) affirming the Secretary's denial of LaVigne's claim for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act as amended. For the following reasons we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant filed her application for disability insurance benefits on April 15, 1987, alleging that she became disabled and unable to work on February 10, 1975, due to hypertension and birth defects affecting her right arm, right hand, right leg and right foot.[1] The Secretary denied claimant's application in August, 1987. The Secretary denied claimant's application upon reconsideration on October 23, 1987. Dissatisfied with the Secretary's determination, the claimant requested a hearing before an Administrative Law Judge (ALJ). This hearing was held on January 14, 1988.
 
 
 3
 On March 28, 1988, the ALJ issued his decision denying benefits to the claimant. The Appeals Council denied claimant's request for a review on July 6, 1988, making the ALJ's decision the final decision of the Secretary. Claimant appealed to the district court. On March 31, 1989, the United States Magistrate issued a Report and Recommendation proposing that the Secretary's decision denying appellant's claims be upheld. Claimant filed objections to the Magistrate's Report and Recommendation. On April 28, 1989, the district court issued its Memorandum Opinion and Order granting the Secretary's motion for summary judgment in accordance with the Magistrate's Report and Recommendation. Claimant thereafter filed this timely appeal.
 
 
 4
 The following evidence was introduced at the January 14, 1988 hearing.
 
 
 5
 Claimant was born on October 7, 1931. She was 48 years old at the expiration date of her covered status, September 30, 1979. LaVigne graduated high school and attended one year of business school. She previously worked as a sales clerk in a gift shop (March, 1950-November, 1964) and as a sales clerk in a clothing store (April, 1965-February, 1975). LaVigne last worked in February, 1975, alleging disability beginning February 10, 1975, due to high blood pressure, hypertension, and birth defects of the right arm and right foot.[2]
 
 
 6
 Claimant testified that she has had problems using her right hand since birth, adding that she is now unable to carry anything with her right arm or right hand. LaVigne further testified that she performed household chores, such as light cooking and cleaning, using only her left hand. Claimant reads, watches television, and drives with the aid of a medical appliance that compensates for the weakness in her right leg.
 
 
 7
 Dr. Zvirbulis, an orthopedic physician, examined the claimant on November 28, 1979. The doctor, noting that LaVigne's right upper extremity was shortened with uncontrolled spasm and partial cerebral palsy, concluded that claimant had a generalized birth defect of the right upper extremity. Though LaVigne complained of pain in the right shoulder and upper arm, an x-ray of her right shoulder revealed "no bony abnormalities." Claimant's abduction and flexion range were significantly below normal. Furthermore, LaVigne experienced pain at the motion extremes. Dr. Zvirbulis diagnosed periarthritis of the right shoulder and recommended that claimant undergo physical therapy.
 
 
 8
 Claimant attended her first physical therapy session in December, 1979. Beth Armstrong, a registered physical therapist, found that LaVigne had increased tone in the right hand and wrist, and good control of the right shoulder and elbow. Passive range of motion in the right shoulder was within normal limits. Armstrong diagnosed right shoulder pericapsulitis and instructed the claimant to exercise, and apply hot packs to, the right shoulder.
 
 
 9
 LaVigne was reexamined by Dr. Zvirbulis on January 9, 1980. Claimant informed the doctor that an ultrasound treatment administered by the physical therapist helped decrease the pain in her shoulder. LaVigne also felt that her range of motion had significantly improved. Dr. Zvirbulis found that LaVigne's range of motion of the right shoulder was full with no pain at the extremes.
 
 
 10
 On February 5, 1980, Beth Armstrong reported that the ultrasound treatment relieved claimant's right shoulder pain. The registered physical therapist, though reporting considerable spasticity in claimant's right arm, noted that LaVigne's range of motion continued to be within normal limits. Armstrong indicated that claimant used her right arm extensively and that LaVigne was generally very active. The physical therapist instructed claimant to use moist packs to relieve muscle pain. LaVigne scheduled no further therapy appointments.
 
 
 11
 Dr. Jungwirth treated LaVigne from March, 1972 to March, 1978. The doctor noted that claimant's blood pressure was 146/88 in September, 1977, 160/76 in November, 1977, and 164/104 in March, 1978. LaVigne exhibited no evidence of congestive heart failure and did not complain of chest pains. Dr. Jungwirth reported that fibroid tumors found in LaVigne's uterus in 1972 did not limit claimant's activities. Dr. Jungwirth diagnosed hypertension, arthritis of the lumbar spine and left knee, and congenital deformity of the right arm limiting its use.
 
 
 12
 Dr. Charles Krawec, a physician specializing in internal medicine, treated the claimant from 1972 through 1987. Dr. Krawec reported that LaVigne's blood pressure ranged from 180/100 in 1972 to 130/80 in December, 1987. The doctor diagnosed "deformity and paralysis of the right leg and arm from a birth defect," and hypertension.
 
 
 13
 Ms. Elaine Tripi, a vocational expert (VE), testified at the hearing before the ALJ. Ms. Tripi classified LaVigne's past work as light and unskilled. The ALJ, in a hypothetical posed to the VE, questioned whether a person of LaVigne's age, education, and background, suffering from claimant's physical impairments, would be capable of performing her past relevant work or any other unskilled job. Ms. Tripi concluded that the hypothetical person could not perform her past relevant work, but that she could perform entry level sedentary jobs including clerk or protective signal operator. Ms. Tripi testified that approximately 2,000 such jobs existed in the regional (Detroit) economy in 1979, and approximately 4,000 such jobs existed throughout Michigan.
 
 
 14
 The ALJ, after reviewing the testimony and medical evidence presented at the hearing, rendered his decision on March 28, 1988. The ALJ concluded that LaVigne was not disabled within the meaning of the Social Security Act. Though the ALJ found that claimant had uncomplicated hypertension and birth defects to the right arm and right leg prior to October 1, 1979, he determined that "these impairments did not meet or equal the criteria for a listed impairment in Appendix 1, Subpart P, Regulations No. 4." The ALJ, finding that claimant's subjective symptomatology was not supported by the objective medical evidence, concluded that the claimant maintained the residual functional capacity to perform a limited range of sedentary work that existed in the regional economy. The ALJ therefore denied LaVigne's claim for disability benefits.
 
 
 15
 Claimant argues that the Secretary's finding that she had the residual functional capacity to perform a limited range of sedentary work is not supported by substantial evidence. Specifically, claimant argues that she suffers from hypertension and a severe congenital defect which could reasonably be expected to prevent any substantial gainful activity.
 
 II.
 A.
 
 16
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983).
 
 
 17
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Secs. 404.1520(b), 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. Secs. 404.1520(c), 416.920(c).
 
 
 18
 If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Secs. 404.1520(d), 416.920(d). See 20 C.F.R. Secs. 404.1525(a), 416.925(a). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that LaVigne did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. Secs. 404.1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the instant case the ALJ found that LaVigne was not capable of returning to her particular occupation.
 
 
 19
 At this step in the analysis it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. 20 C.F.R. Secs. 404.1520(f)(1), 416.920(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." See 20 C.F.R. Pt. 404, Subpt. P., App. 2. If the characteristics of the claimant do not identically match the description in the grid, however, then the grid is used only as a framework or a guide to the disability determination. Kirk, 667 F.2d at 528. In the instant case the ALJ determined that claimant's characteristics resembled, but did not identically match, the characteristics found in the residual functional capacity grid at Rule 201.18 suggesting no disability. 20 C.F.R. Pt. 404, Subpt. P., App. 2.
 
 B.
 
 20
 Claimant argues that the ALJ erroneously concluded that there was insufficient evidence of her medical disorders to support a debilitating impairment prior to October 1, 1979. We reject this argument.
 
 
 21
 LaVigne maintains that she cannot perform even sedentary work. Sedentary work involves lifting and carrying small items including files, ledgers and tools weighing no more than ten pounds. A sedentary job entails much sitting with occasional standing and walking. 20 C.F.R. Sec. 404.1567(a). The ALJ found the claimant physically able to perform a limited range of sedentary work prior to October 1, 1979:
 
 
 22
 Giving the claimant the benefit of the doubt, the undersigned will concede that the claimant had all of the limitations which she alleged. That is, I would assume that the claimant had a degree of discomfort in her right leg which, prior to October 1, 1979, made prolonged walking and standing difficult. However, I am unable to concede that the claimant was also incapable of occasional walking and standing in the absence of a description of her impairment to the right leg, without evidence of treatment for pain in the right leg, and without any evidence that the claimant ever took pain medications. I conclude, therefore, that the claimant, prior to October 1, 1979, was capable of occasional walking and standing in a work setting. I will further assume that the claimant, prior to October 1, 1979, had a functionally useless right arm and hand. Thus, the claimant was limited to lifting and carrying that which could be done with one hand such as objects weighing 10 pounds or less. Furthermore, given that assumption, the claimant could not have performed any jobs requiring bilateral manual dexterity. These limitations left the claimant with a residual functional capacity for a limited range of sedentary work prior to October 1, 1979.
 
 
 23
 Though claimant has been diagnosed with uncomplicated hypertension and congenital defects of the right upper and lower extremities, the record contains little objective evidence of an underlying condition which would cause severe work-related functional limitations. The ALJ specifically found that the objective medical evidence failed to confirm the severity of the pain the claimant alleged. The ALJ further determined that LaVigne's underlying condition could not reasonably be expected to produce disabling pain.
 
 
 24
 This court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). However, subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. 20 C.F.R. Sec. 404.1529. To support a claim for disability there must be objective medical evidence in the record of an underlying medical condition. Duncan, 801 F.2d at 853. If this requirement is met, the court must also determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition, or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain. Id. In applying this standard the reviewing court should show deference to the decision of the administrative law judge in assessing credibility. Gooch v. Secretary of Health & Human Servs., 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075 (1988).
 
 
 25
 LaVigne's complaints of disabling pain were properly rejected by the ALJ because the medical evidence failed to confirm the severity of the pain. Though LaVigne alleged fully disabling and debilitating symptomatology, the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict. The ALJ, in his March 28, 1988 Decision, held:
 
 
 26
 The obvious problem in determining the claimant's residual functional capacity for the period prior to October 1, 1979 is that there is little medical evidence, and what medical evidence there is conflicts with the claimant's testimony. The claimant testified that since 1977 she has had really no significant use of her right upper extremity. This is not confirmed by the medical records which show the claimant having a full range of motion in the right shoulder joint and her reporting to treating sources that she uses her right arm regularly. The claimant said that since 1976 she has had chronic right leg pain which makes walking difficult. This complaint is not reported in any of the medical records, nor do the medical records describe the impairment in the claimant's right leg at all. Despite the fact that the claimant alleged the presence of chronic pain since 1976, there is no indication that she has ever taken pain medications, and she takes no pain medications currently. Furthermore, there is also no evidence of a consistent treatment relationship for chronic pain.
 
 
 27
 The determination of disability must be made on the basis of the entire record. Hardaway v. Secretary of Health & Human Servs., 823 F.2d 922, 927 (6th Cir.1987). LaVigne worked from 1950 through January, 1975 with the congenital defect she now claims is disabling. Furthermore, claimant admitted that she performs household chores such as light cooking and cleaning. LaVigne also reads, watches television, and drives an automobile. The performance of daily activities may be used to undermine a claimant's allegations of severe and disabling pain. Gist v. Secretary of Health & Human Servs., 736 F.2d 352, 357-58 (6th Cir.1984).
 
 
 28
 Because the ALJ's determination that the claimant retained the ability to perform a limited range of sedentary work is supported by substantial evidence, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Claimant initially filed an application for disability insurance benefits on February 17, 1981, alleging disability since 1980 due to hypertension and birth defects of the right upper and lower extremities. Her application was denied initially and on reconsideration. LaVigne did not pursue her administrative remedies further. The appellee does not argue that the earlier decision has any res judicata effect on the current claim
 
 
 [2]
 Claimant revised the disability onset date to June, 1977 during the hearing before the ALJ